# Illinois Official Reports

## Appellate Court

---

**People v. Eagletail, 2014 IL App (1st) 130252**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LATESHIA EAGLETAIL, Defendant-Appellant. |
| District & No. | First District, Third Division <br> Docket No. 1-13-0252 |
| Filed | December 23, 2014 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, Nos. TT-370-264, TT-370-265; the Hon. Michael R. Clancy, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier and Kathleen Weck, both of State Appellate Defender's Office, of Chicago, for appellant. <br><br> Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Mary P. Needman, and Morgan E. Muslin, Assistant State's Attorneys, of counsel), for the People. |

Panel                    JUSTICE HYMAN delivered the judgment of the court, with opinion. Presiding Justice Pucinski and Justice Lavin concurred in the judgment and opinion.

## OPINION

¶ 1    Defendant Lateshia Eagletail, who was found guilty of two misdemeanor counts of driving under the influence of alcohol, contends the State failed to offer sufficient evidence that she was driving under the influence (DUI). She argues the trial court improperly allowed the State to introduce the results of her breath analysis through a printout (IntoxNet MIS report), where the State should have been required to offer the actual breath ticket. Eagletail further argues that in light of the unreliability of the field-sobriety tests and the fact that her breath analysis results should not have been admitted without the actual ticket, the officers' observations fall short of proving she was driving under the influence.

¶ 2    We hold the trial court did not abuse its discretion in admitting the IntoxNet MIS report into evidence and that there was sufficient credible evidence to prove Eagletail guilty of DUI beyond a reasonable doubt. The Illinois Supreme Court in *People v. Orth*, 124 Ill. 2d 326 (1988), did not say or imply that only the "actual printout" was admissible to show the results of the breath test.

## BACKGROUND

¶ 4    The facts pertinent to this appeal are not in dispute.

¶ 5    At about 10:40 p.m. on July 21, 2010, Officers Lin and Loughney of the Chicago police department responded to a call of a traffic accident involving an unmarked police car. When the officers arrived, they saw Eagletail's van and the unmarked police car bumper to bumper. Eagletail was seated in the driver's seat. After running the van's vehicle identification number, the officers confirmed Eagletail was the owner. In response to Officer Lin's questioning about the cause of the accident, Eagletail told the officers she was having issues with her brakes and steering.

¶ 6    Officers Lin and Loughney are experienced officers trained in DUI detection. Lin and Loughney both testified that Eagletail's breath smelled strongly of alcohol when they spoke with her. In response to Officer Loughney's question about whether she had been drinking, Eagletail stated she had "two or three beers" and that the punch "may have been spiked." The officers recovered an empty beer bottle from inside her van. Officer Loughney noted that Eagletail's eyes were bloodshot and she was acting erratically and seemed agitated. Officer Loughney testified that in her professional opinion, Eagletail was under the influence of alcohol.

¶ 7    The officers transported Eagletail to the 8th district police station to undergo field-sobriety tests. Officer Ernst Mategrano, an expert in DUI and a certified breath tech operator, administered the field-sobriety tests in accordance with National Highway Traffic Safety Administration procedures. Officer Mategrano administered three field-sobriety tests to Eagletail: (1) the horizontal gaze nystagmus (HGN) test (a lateral or horizontal jerking when the eye gazes to the side), (2) the walk-and-turn test, and (3) the one-legged-stand test.

¶ 8    While administering the HGN test, Officer Mategrano held his pen at a 45-degree angle, six to eight inches from Eagletail at her shoulder level, while he observed her eye movement. Officer Mategrano instructed Eagletail to follow his pen with her eyes but not to move her head. Mategrano testified four factors indicate impairment in an HGN test; Eagletail exhibited six factors, plus vertical nystagmus. She showed horizontal nystagmus in both eyes, maximum deviation, and lack of smooth pursuit, all indicators of impairment.

¶ 9    Officer Mategrano instructed Eagletail on the steps of the walk-and-turn test and demonstrated to Eagletail to take nine heel-to-toe steps and turn, leaving her left foot in place, and take small steps until she reached nine steps. Eagletail began walking before Mategrano finished giving her the instructions. Eagletail stopped to steady herself throughout the test, did not touch heel-to-toe, and turned incorrectly. Eagletail displayed four out of nine clues of impairment; two clues suffice to indicate impairment.

¶ 10    Mategrano instructed Eagletail during the one-legged-stand test to raise one leg six inches from the ground with her hands at her side. During the test, Eagletail put her foot down three times, indicating impairment.

¶ 11    Following the administration of the field-sobriety tests, Officer Mategrano arrested Eagletail for DUI and asked her to submit to a Breathalyzer test. Eagletail agreed. Officer Mategrano is a certified breath tech operator and has performed 200 to 300 tests during his career. The instrument Mategrano used was certified for accuracy and underwent a self-diagnostic check before Eagletail's breath test to ensure there was no alcohol in the instrument. Mategrano entered Eagletail's information into the instrument, including her name, birth date and driver's license number, as well his name as the breath tech operator and arresting officer. Mategrano instructed Eagletail to take a deep breath and blow into the machine. The machine captured Eagletail's breath sample and produced a breath ticket showing her blood alcohol level was 0.170. The legal limit in Illinois is 0.08.

¶ 12    At the completion of the test, Mategrano recorded the details of Eagletail's breath test in the breath analysis logbook, including her name, the date and time of the test, her recorded blood alcohol level, and his name as both the operator and arresting officer. The logbook ensures all pertinent information is recorded in the event any paperwork for the breath test is lost.

¶ 13    Eagletail was charged with two counts of driving under the influence, as well as failure to avoid an accident, transportation of alcohol, and operating an uninsured vehicle. At her bench trial, Officer Mategrano opined that Eagletail was under the influence of alcohol. He based this on the strong alcohol smell of Eagletail's breath, the clues of impairment she showed during the field-sobriety tests, and her 0.170 blood alcohol level result on the breath test.

¶ 14    As proof of Eagletail's intoxication, the State submitted a computer-generated ticket for Eagletail's breath test from the Department of State Police–IntoxNet MIS report–and the logbook. The original breath ticket that physically printed out of the breath machine at the time of Eagletail's breath test was lost. The IntoxNet MIS report was generated on June 20, 2012, and faxed to Officer Mategrano at the police station. All information entered into the breath test machine had been downloaded onto the Department of State Police's computer once the machine's memory was full. Officer Mategrano testified that the report was "a true and accurate representation of that breath ticket that was given on July 21, 2010." The document contained all and identical information that is on the actual physical printout, including Eagletail's name, birth date, and driver's license number, as well as Officer Mategrano's name

as the breath tech operator and arresting officer and the 0.170 breath test result. Eagletail objected to the IntoxNet MIS report being entered into evidence.

¶ 15 The trial court found Eagletail guilty of the two misdemeanor counts of DUI and acquitted her of the remaining charges. The court sentenced Eagletail to 24 months' supervision.

¶ 16 ANALYSIS

¶ 17 Foundation Requirements of Breath Tests

¶ 18 Eagletail contends the trial court erred in admitting evidence of the results of her breath test. She claims that by failing to produce the actual printout from the breath test machine, the State failed to satisfy the five foundational requirements for admission of the breath test results as set forth in *People v. Orth*, 124 Ill. 2d 326, 340 (1988).

¶ 19 For admission of breath test results, the evidence must show: (1) the tests were performed according to the uniform standard adopted by the Illinois Department of Public Health; (2) the operator administering the tests was certified by the Department of Public Health; (3) the machine used was a model approved by the Department of Public Health, was tested regularly for accuracy, and was working properly; (4) the motorist was observed for the requisite 20 minutes before the test and, during this period, the motorist did not smoke, regurgitate, or drink; and (5) the results appearing on the "printout" sheet can be identified as the tests given to the motorist. *Orth*, 124 Ill. 2d at 340; *People v. Claudio*, 371 Ill. App. 3d 1067, 1070 (2007) (foundation requirements are same in criminal trial). Both parties agree that the first four factors are satisfied; at issue is only the final factor. We review *de novo* whether the State's introduction of Eagletail's breath analysis results, via the IntoxNet MIS report, satisfies the fifth factor of *Orth*. *In re C.N.*, 196 Ill. 2d 181, 203 (2001).

¶ 20 Eagletail argues that the fifth factor in *Orth* requires the State to produce the actual printed breath ticket from the machine. We disagree. Eagletail's interpretation of what our supreme court intended is far too constricting. *Orth* does not state that it is necessary to produce the actual printout; it merely requires the production of evidence showing that the results of the breath test can be identified as those of the defendant. If the Illinois Supreme Court meant to only allow the "actual printout," the fifth factor would have so required.

¶ 21 No court has analyzed the fifth factor from *Orth* and few have mentioned it. See *People v. Clark*, 178 Ill. App. 3d 848, 857 (1989) (fifth factor described as "test results were identified as those of defendant"); *People v. Caruso*, 201 Ill. App. 3d 930, 942 (1990) ("[t]he fifth factor mentioned in *Orth* requires evidence that the results on the printout sheet can be identified as the test given defendant," but adds no further detail, saying it is "self-explanatory").

¶ 22 The question is whether the State presented evidence establishing that the results of the breath test were in fact Eagletail's. Officer Mategrano's testimony connected the results on the IntoxNet MIS report to the results he observed on the night he administered the breath test to Eagletail. The report contains all the same identifiable information that is contained on the actual printout, including Eagletail's name, birth date, and driver's license number, as well as Officer Mategrano's name as the breath tech operator and arresting officer and the 0.170 breath test result. Officer Mategrano's testimony captured all the information of the actual breath analysis test and, accordingly, established *Orth*'s fifth factor.

¶ 23 During oral argument, Eagletail argued that because *Orth* was decided before today's modern technology, it should be interpreted as requiring only the original paper report. If at all

possible, existing law should follow technology's advancements. See *State v. Brereton*, 2013 WI 17, ¶ 51, 345 Wis. 2d 563, 826 N.W.2d 369 (court refused to read language in warrant as binding law enforcement to specific GPS technology based on type of GPS technology used in previous case, finding "the officers used technology reasonably contemplated under the warrant, whereby the officers were able to increase their efficiency, at no demonstrated, unreasonable cost to the Fourth Amendment interests of [defendant]").When old ways of doing things are abandoned, the law should be receptive to adopting to the new technology as long as the law can be read to prescribe it. Otherwise, the law becomes a constant obstacle to technological progress. Here, the fifth factor can be interpreted to encompass the computer record.

¶ 24                   Admissibility of the IntoxNet MIS Report as a Business Record

¶ 25      Eagletail next contends that even if the IntoxNet MIS report properly satisfied the fifth factor of *Orth*, the State failed to show the report fulfilled the statutory requirements to qualify as a business record and, therefore, should not have been admitted into evidence. Eagletail claims the State introduced the report solely on Officer Mategrano's testimony and he "lacked any familiarity with the manner in which the document was prepared."

¶ 26      A trial judge's evidentiary rulings, including the determination of whether or not business records are admissible, will not be disturbed on review absent an abuse of discretion. *People v. Morrow*, 256 Ill. App. 3d 392, 396 (1993). As a reviewing court, we only will reverse when the ruling was "arbitrary, fanciful or unreasonable" or "no reasonable [person] would take the view adopted by the trial court." (Internal quotation marks omitted.) *People v. Donoho*, 204 Ill. 2d 159, 182 (2003).

¶ 27      The IntoxNet MIS report was entered into evidence under the business records exception to the hearsay rule. Breath test tickets and supporting documents are hearsay but admissible under the business record exception. *People v. Russell*, 385 Ill. App. 3d 468, 475 (2008). Illinois Rule of Evidence 803(6) provides that "records of regularly conducted activity" are not considered inadmissible hearsay where they constitute:

> "A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness, but not including in criminal cases medical records." Ill. R. Evid. 803(6) (eff. Jan. 1, 2011).

¶ 28      The party seeking the document's admission into evidence as a business record must lay an adequate foundation by showing the record was (1) a memorandum or record of the act, (2) made in the regular course of the business, and (3) made at the time of the act or within a reasonable time after. *Morrow*, 256 Ill. App. 3d at 397.

¶ 29      Through Officer Mategrano's testimony, the State satisfied the business records foundational requirements for admissibility of the IntoxNet MIS report. Mategrano testified the report was a record of Eagletail's breath test results and that the record was made in the

regular course of business. He testified the report accurately depicted Eagletail's results as he recorded them on July 21, 2010. While the report was "generated" almost two years after the breath test had been administered, Officer Mategrano's testimony confirmed that the information in the report was stored as soon as it was entered into the breath test machine and then transmitted and stored remotely at the Department of State Police when the machine's memory became full.

¶ 30 We disagree with Eagletail that Officer Mategrano's testimony could not satisfy the foundational requirements because he lacked sufficient knowledge of the manner in which the document was prepared. Generally, the maker of the record need not testify. *People v. Hutchison*, 2013 IL App (1st) 102332, ¶ 21. Anyone familiar with the records and the business can testify to provide the necessary foundational testimony. *Id.* ("Section 11-501.4 [of the Vehicle Code] is clear in its requirements and the statute makes no mention of requiring familiarity with the actual making of the record."); see 725 ILCS 5/115-5(a) (West 2010) ("All other circumstances of the making of such writing or record, *including lack of personal knowledge by the entrant or maker*, may be shown to affect its weight, but such circumstances shall not affect its admissibility." (Emphasis added.)).

¶ 31 Officer Mategrano was qualified to provide the foundational requirements necessary to admit the report into evidence. He knew that once entered into the machine, the information was stored and then transferred to the Department of State Police. He performed hundreds of tests over the years and was obviously familiar with how the DUI unit's business operations functioned.

¶ 32 Eagletail relies on *People v. Virgin*, 302 Ill. App. 3d 438, 449-50 (1998), to support her position. In *Virgin*, the court found the State failed to lay a proper foundation for the admission of an animal control receipt into evidence under the business records exception because the State did not present any testimony that the receipt was made in the regular course of business, that receipts were made in the regular course of business, or that the receipt was made at or near the time of the transaction being recorded. *Id.* Unlike in *Virgin*, Officer Mategrano's testimony established sufficient foundation to establish the report was prepared in the regular course of business. Mategrano testified that he had performed hundreds of breath tests with the machine used to administer Eagletail's test. He knew that the information he entered into the machine was stored until the machine's memory was full and then it was transferred to a computer at the Department of State Police.

¶ 33 Sufficiency of the Evidence

¶ 34 Eagletail next argues that the evidence presented at trial was insufficient to support finding her guilty of driving under the influence under section 11-501(a)(2) of the Illinois Vehicle Code (Code) (625 ILCS 5/11-501(a)(2) (West 2010)). Eagletail claims the State failed to present sufficient evidence of impaired driving to prove the charge beyond a reasonable doubt.

¶ 35 When a defendant challenges the sufficiency of the evidence to sustain his or her conviction, as a reviewing court we must look at all the evidence in the light most favorable to the State to determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Cunningham*, 212 Ill. 2d 274, 278 (2004). The trier of fact assesses the credibility of the witnesses, weighs the testimony, and draws reasonable inferences from the evidence. *People v. Ortiz*, 196 Ill. 2d 236, 259 (2001). We will not set aside a criminal conviction unless the evidence appears so improbable or unsatisfactory that it

creates a reasonable doubt as to the defendant's guilt. *People v. Cox*, 195 Ill. 2d 378, 387 (2001).

¶ 36    To sustain a conviction under section 11-501(a)(2) of the Code, the State must prove beyond a reasonable doubt that the defendant was (1) in actual physical control of a vehicle and (2) under the influence of alcohol at the time. 625 ILCS 5/11-501(a)(2) (West 2010); *People v. Diaz*, 377 Ill. App. 3d 339, 344 (2007). Also, the State must prove the defendant's ability to operate a motor vehicle was impaired by the consumption of alcohol. *Diaz*, 377 Ill. App. 3d at 344. The State can use circumstantial evidence to prove a defendant guilty of DUI. *Id.* at 345.

¶ 37    The trier of fact could reasonably infer, based on the evidence, that Eagletail was driving the motor vehicle. When Officers Lin and Loughney arrived at the scene they observed Eagletail alone in a van that belonged to her. When the officers asked Eagletail what happened in regard to the van hitting the unmarked police car, she responded that there was an issue with her brakes and steering. All these observations provide strong circumstantial evidence that Eagletail was driving.

¶ 38    Eagletail contends the State presented insufficient evidence to prove she was intoxicated beyond a reasonable doubt. Nevertheless, the credible testimony of the arresting officer by itself can sustain a conviction of driving under the influence. *People v. Morris*, 2014 IL App (1st) 130152, ¶ 20; *People v. Janik*, 127 Ill. 2d 390, 402-03 (1989) (arresting officer's testimony about odor of alcohol, defendant's watery eyes, and defendant's poor performance on field-sobriety tests sufficient evidence of intoxication). Officers Lin, Loughney, and Mategrano, all with extensive training and experience, opined Eagletail was intoxicated. All three officers smelled a strong odor of alcohol on Eagletail's breath. When questioned about whether she had been drinking, Eagletail responded that she had had two or three beers and some punch that may have been spiked with alcohol. Eagletail also failed all three field-sobriety tests Officer Mategrano administered at the police station. The credible testimony of these three officers, all present around the time of Eagletail's arrest, was sufficient to establish Eagletail's intoxication.

¶ 39    Eagletail also claims that the field-sobriety tests were improperly administered and, therefore, resulted in invalid tests. We do not find Eagletail's argument persuasive. Whether a field-sobriety test was performed correctly goes to the test's admissibility. See *People v. McKown*, 236 Ill. 2d 278, 305-11 (2010). Even if true that the tests were performed incorrectly, and admitted in error, it was harmless because the testimony of Officers Mategrano, Lin, and Loughney presented sufficient evidence to prove Eagletail was intoxicated. Before the administration of the field-sobriety tests, Officers Lin and Loughney determined that Eagletail was intoxicated. Officer Mategrano also determined she was intoxicated before he administered the field-sobriety tests, as well as from the results of her breath test. Moreover, we see no reason to depart from settled Illinois case law that has held the tests to be reliable. *People v. Robinson*, 349 Ill. App. 3d 622, 631 (2004) ("HGN test, when used with the walk-and-turn and one-leg stand tests, is the most accurate and effective method of detecting impairment" (citing *National Highway Traffic Safety, U.S. Department of Transportation, Psycho-Physical Tests for DWI Arrests*, No. DOT-HS-802-424, at 39 (June 1977))); *McKown*, 236 Ill. 2d at 302-03 (2010) ("A failed HGN test is relevant to impairment in the same manner as the smell of alcohol on the subject's breath or the presence of empty or partially empty liquor containers in his car. Each of these facts is evidence of alcohol consumption ***.").

¶ 40                          Merging Misdemeanor DUI Convictions

¶ 41          We agree with Eagletail, and the State concedes, that the mittimus should be corrected to reflect only one conviction for DUI because there was only one occasion. *People v. King*, 66 Ill. 2d 551, 566 (1977). Thus, under Supreme Court Rule 615(b)(1), we vacate the DUI conviction under count IV and correct the mittimus to reflect judgment on count V.

¶ 42                                    CONCLUSION

¶ 43          We find the trial court did not abuse its discretion in admitting the IntoxNet MIS report into evidence and that there was sufficient credible evidence to prove Eagletail guilty of DUI beyond a reasonable doubt. We also merge the DUI convictions.

¶ 44          Affirmed.