2015 IL App (1st) 122306

SIXTH DIVISION
August 21, 2015

No. 1-12-2306

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | Nos.   TT 459 937 |
| MARC SMITH, | ) | TT 459 939 |
| | ) | |
| Defendant-Appellant. | ) | Honorable |
| | ) | Susan Kennedy Sullivan, |
| | ) | Judge Presiding. |

JUSTICE ROCHFORD delivered the judgment of the court, with opinion.
Presiding Justice Hoffman and Justice Hall concurred in the judgment and opinion.

**OPINION**

¶ 1    A jury convicted defendant, Marc Smith, of driving on a suspended license (625 ILCS 5/6-303(a) (West 2010)), and driving with an alcohol concentration of 0.08 or more (625 ILCS 5/11-501(a)(1) (West 2010)), and acquitted him of driving under the influence of alcohol (625 ILCS 5/11-501(a)(2) (West 2010)).  On the conviction for driving on a suspended license, the trial court sentenced defendant to 24 months' conditional discharge.  On the conviction of driving with an alcohol concentration of 0.08 or more, the trial court sentenced defendant to a concurrent term of 24 months' conditional discharge, as well as 360 hours of community service, a 30-hour alcohol treatment program, a victim impact panel, and $200 in fines.  On appeal, defendant challenges only his conviction of driving with an alcohol concentration of 0.08 or more, arguing that the trial court erred in admitting the result of his Breathalyzer test, without which there was no evidence proving his guilt beyond a reasonable doubt.  We reverse.

¶ 2                                I. Pretrial Proceedings

¶ 3    Defendant filed a motion *in limine* seeking to exclude the result of the Breathalyzer test administered to him on March 19, 2010, because, based on documents in defendant's possession, the Breathalyzer machine was not properly certified as accurate.  At the hearing on the motion *in limine* on the first day of trial, defendant argued that pursuant to the applicable administrative regulations (20 Ill. Adm. Code 1286.200 (2009) and 20 Ill. Adm. Code 1286.230 (2011)), the State needed to prove, as a foundation for admission, that the Breathalyzer machine had been certified as accurate within 62 days before his test.  The police station's logbook indicated, however, that the Breathalyzer machine was certified as accurate about 120 days prior to defendant's test.

¶ 4    The State claimed that the Breathalyzer machine had been electronically certified as accurate within the relevant time frame, as indicated in a letter and report (referred to collectively herein as the "electronic certification") from the Illinois State Police, dated March 2, 2011, about 13 months before trial.    The letter, signed by the "Keeper of Records" of the Alcohol and Substance Testing Section of the Illinois State Police Academy, and notarized by a notary public, stated that it was made in response to a subpoena *duces tecum* and indicated that the Breathalyzer machine had been tested for accuracy on March 1, 2010, and April 1, 2010.  The report provided numerical results for the testing, but did *not* provide any interpretation of those results and did not state whether or not the Breathalyzer machine passed the accuracy tests.

¶ 5    Defendant argued that the State had never tendered the electronic certification during pretrial discovery, though the State apparently had the document in its possession for over a year. Defendant argued he had based his defense on the State's apparent inability to provide the necessary foundation for admission of the Breathalyzer test results, and that the court should

exclude the electronic certification and, by extension, the Breathalyzer test results based on the State's "egregious" delay and discovery violation.

¶ 6    The State claimed it had tendered the electronic certification to the defense at an earlier pretrial hearing.  The trial court initially noted that it was unaware of such a tender because a different judge presided over the earlier pretrial hearing and no indication was made in the record that the State had tendered the electronic certification to the defense on that date.

¶ 7    The trial court subsequently noted, though, that the regular practice was for the court to receive the electronic certification in a manila envelope, and for the court to then hand the electronic certification to the State in the presence of defendant.  Accordingly, as defendant likely would have been made aware of the electronic certification on the date it was presented to the State in open court, there was no discovery violation and, therefore, the trial court denied defendant's motion *in limine* to exclude the Breathalyzer test results.

¶ 8    The State later asked the court, outside the presence of the jury, to rule on the admissibility of the electronic certification of the Breathalyzer machine.  Over defense objection, the trial court ruled that the electronic certification was admissible as a self-authenticating business record.  See Ill. R. Evid. 803(6) (eff. April 26, 2012); R. 902(11) (eff. Jan. 1, 2011).

¶ 9                                    II.  Trial

¶ 10    At trial, Howard Phillips testified that at approximately 4 p.m. on March 19, 2010, he was driving his Chrysler west on 79th Street and stopped at a red light at 79th Street and Kedzie Avenue.  Four vehicles were ahead of him at the stoplight.  He heard a vehicle approaching behind him, looked in the rearview mirror, observed defendant driving the vehicle, and thought the vehicle was moving too fast and might hit him.

¶ 11    Defendant's vehicle struck Howard's Chrysler, causing the Chrysler to strike a light pole. Both of Howard's knees were broken as a result of the collision. Howard was taken to the hospital for surgery on his knees.

¶ 12    Officer Rodriguez testified he received a call at about 4 p.m. on March 19, 2010, to respond to a traffic crash near 79th Street and Kedzie Avenue.  When he arrived at the scene, Officer Rodriguez saw a Volvo facing east in the westbound lane closest to the median, a Chrysler was wrapped around a light pole, and a Volkswagen was on the other side of the median with a cracked windshield.

¶ 13    Defendant was at the scene, being treated inside an ambulance.  Defendant was asked if he wanted to go to the hospital, and he said no.  The paramedic told Officer Rodriguez that defendant was a driver of one of the vehicles involved in the accident.  Officer Rodriguez and defendant then walked toward the officer's car.  Officer Rodriguez noticed that defendant's eyes were red and bloodshot.  Defendant told the officer his name, and Officer Rodriguez entered the name in his portable data terminal and ascertained that defendant's driver's license was suspended.  Officer Rodriguez detained defendant inside the police car and asked him about the accident.  Defendant was hesitant to speak, but he did state that he had been traveling westbound on 79th Street.

¶ 14    Inside the police car, Officer Rodriguez smelled the odor of alcohol on defendant's breath and noticed his speech was slurred.  Based on his training and experience with the Chicago police department, Officer Rodriguez opined that defendant was under the influence of alcohol.

¶ 15    Officer Barber testified that shortly after 4 p.m. on March 19, 2010, he went to the scene of a traffic accident at 79th Street and Kedzie Avenue.  Officer Barber saw a green Volvo facing

east in the westbound lane, and a Chrysler wrapped around a light pole. Officer Barber learned that defendant was the driver of the Volvo.

¶ 16    Officer Barber spoke with defendant at the scene and observed that defendant's breath smelled like an "alcoholic beverage," his eyes were bloodshot, and his speech was a little slurred. Officer Barber learned from Officer Rodriguez that defendant's license was suspended, and he took defendant to the police station, where he administered three field sobriety tests. Defendant failed all three tests. Officer Barber formed the opinion that defendant was under the influence of alcohol.

¶ 17    Officer Barber gave defendant a Breathalyzer test. Officer Barber previously had been trained to administer the Breathalyzer test, he was certified as a "breath operator" and was re-certified every 3 years for the past 15 years. When asked whether he knew how the Breathalyzer machine works, Officer Barber explained he knew how to administer the test and that he prepared the machine by hitting "enter" and inputting the test taker's name, date of birth, driver's license number and ticket number along with the officer's name, county, and badge number. Officer Barber testified the machine then self-calibrates and reads .000 to indicate it is calibrated and working properly at the time of the test.

¶ 18    Officer Barber testified the Breathalyzer machine was regularly tested for accuracy by the Illinois State Police and had been tested on March 1, 2010 (prior to defendant's test), and April 1, 2010 (after defendant's test). Officer Barber did not testify to the results of those accuracy tests.

¶ 19    Officer Barber gave defendant the Breathalyzer test on March 19, 2010, approximately two hours after the car accident. Prior to testing him, Officer Barber observed defendant for 20 minutes to ensure he had not eaten or drank anything which would taint the test. After observing defendant for the requisite 20 minutes, Officer Barber prepared the Breathalyzer machine by

inputting the relevant information, after which the machine self-calibrated and read .00. Officer Barber gave defendant a tube attached to the Breathalyzer machine and told him to blow into it for four or five seconds. Defendant did so, after which the Breathalyzer machine showed a result on the screen, and printed out a "breath ticket" which revealed defendant's blood alcohol concentration was 0.099, which was over the legal limit of 0.08. The trial court admitted the breath ticket into evidence.

¶ 20    On cross-examination, Officer Barber testified he does not know how the Breathalyzer machine works and does not test it for accuracy but that he is trained to administer tests using the machine. Officer Barber explained that, at one time, officers from the Illinois State Police came to the police station personally to test the Breathalyzer machine for accuracy, the results of which were written in log books, but that the Illinois State Police no longer personally tests the machine. Instead, the machine is tested electronically on the first day of every month. Officer Barber is not present when the Illinois State Police tests the Breathalyzer machine on the first of the month.

¶ 21    The State rested and the court admitted the electronic certification of the Breathalyzer machine over defendant's objection.

¶ 22    Defendant testified that in the afternoon on March 19, 2010, he was driving westbound in his Volvo on 79th Street to pick up his mother at Midway Airport, when he was sideswiped by another vehicle, a Chrysler, just before Kedzie Avenue. As a result of the collision, defendant slammed into the center median and the other vehicle hit a light pole. Paramedics arrived and asked defendant if he wanted to go to the hospital. Defendant declined.

¶ 23    Defendant was taken to the police station, where Officer Barber told him to take a Breathalyzer test by blowing into the Breathalyzer machine. Defendant blew into the

Breathalyzer machine twice, but it did not "beep" to indicate that it registered a result. Officer Barber never showed defendant a receipt indicating a result.

¶ 24    The jury convicted defendant of driving on a suspended license and driving with an alcohol concentration of 0.08 or more. The jury acquitted defendant of driving under the influence of alcohol. On the conviction of driving on a suspended license, the trial court sentenced defendant to 24 months' conditional discharge. On the conviction of driving with an alcohol concentration of 0.08 or more, the trial court sentenced defendant to a concurrent term of 24 months' conditional discharge, as well as 360 hours of community service, a 30-hour alcohol treatment program, a victim impact panel, and $200 in fines. Defendant appeals his conviction of driving with an alcohol concentration of 0.08 or more; he makes no argument on appeal regarding his conviction of driving on a suspended license.

¶ 25                                III. Analysis

¶ 26    First, defendant contends the State failed to prove him guilty beyond a reasonable doubt of driving with an alcohol concentration of 0.08 or more.

¶ 27    In reviewing the sufficiency of the evidence, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Givens*, 364 Ill. App. 3d 37, 43 (2005). It is the province of the trier of fact to assess the credibility of the witnesses, determine the weight to be given their testimony, resolve conflicts in the evidence, and draw reasonable inferences from the evidence. *Id*.

¶ 28    To prove defendant guilty of driving with an alcohol concentration of 0.08 or more, the State must prove: (1) he drove or was in actual physical control of any vehicle in Illinois; and

(2) the alcohol concentration in his blood was 0.08 or more. 625 ILCS 5/11-501(a)(1) (West 2010).

¶ 29    On appeal, defendant does not argue that the State failed to establish that he was driving or in actual physical control of a vehicle. Rather, defendant's argument is that: the State failed to lay an adequate foundation for admission of the Breathalyzer test results (showing he had an alcohol concentration of 0.099); the Breathalyzer test results, therefore, should not have been admitted; and his conviction should be reversed because without the Breathalyzer test results, there was no evidence that the alcohol concentration in his blood was 0.08 or more. For admission of Breathalyzer test results, the State must show:  (1) the Breathalyzer test was performed according to the uniform standard adopted by the Department of State Police[1]; (2) the operator administering the tests was certified by the Department of State Police; (3) the machine used was a model approved by the Department of State Police, was tested regularly for accuracy, and was working properly; (4) the motorist was observed the requisite 20 minutes before the test and, during this period, he did not smoke, vomit, or drink; and (5) the results appearing on the printout sheet can be identified as the tests given to the motorist. *People v. Orth*, 124 Ill. 2d 326, 340 (1988).

¶ 30    At issue here is the third *Orth* factor, the accuracy requirement. To satisfy this requirement, the State must establish that the Breathalyzer test was performed in accordance with section 11-501.2(a) of the Illinois Vehicle Code (625 ILCS 5/11-501.2(a) (West 2010)), and the regulations promulgated by the Illinois Department of State Police. *People v. Clairmont*, 2011 IL App (2d) 100924, ¶ 12.

---

[1]    Pursuant to Public Act 91-828 (Pub. Act 91-828, § 5 (eff. Jan. 1, 2001)), reference to the "Department of Public Health" was replaced by the "Department of State Police." See 625 ILCS 5/11-501.2(a) (West 2010).

¶ 31    In pertinent part, section 11-501.2(a) authorizes admission of the chemical analysis of a person's breath in the prosecution of the offense of driving with an alcohol concentration of 0.08 or more. 625 ILCS 5/11-501.2(a) (West 2010). Section 11-501.2(a)(1) provides that "to be considered valid" the Breathalyzer test must be performed "according to standards promulgated by the Department of State Police." 625 ILCS 5/11-501.2(a)(1) (West 2010). Section 11-501.2(a)(1) further provides: "The Director of State Police is authorized to *** certify the accuracy of breath testing equipment. The Department of State Police shall prescribe regulations as necessary to implement this Section." *Id.* Section 11-501.2 is "intended to ensure reliability of evidence introduced in prosecutions for driving under the influence." *People v. Emrich*, 113 Ill. 2d 343, 349 (1986).

¶ 32    Pursuant to section 11-502.1(a)(1), the Department of State Police promulgated regulations contained in sections 1286.200 and 1286.230 of title 20 of the Illinois Administrative Code. See 20 Ill. Adm. Code 1286.200 (2009); 20 Ill. Adm. Code 1286.230 (2011). Under section 1286.200, a rebuttable presumption that the Breathalyzer machine was accurate arises if the following four conditions are met: (1) the Breathalyzer machine was approved pursuant to section 1286.210 of the regulations (20 Ill. Adm. Code 1286.210 (2011) (not pertinent here)); (2) an accuracy check was conducted prior to defendant's test that was within the "accuracy tolerance" described in section 1286.230 of the regulations; (3) no accuracy check was performed after defendant's test or an accuracy check was performed after defendant's test and it was within the accuracy tolerance; and (4) defendant's test was conducted not more than 62 days after the last accuracy check. 20 Ill. Adm. Code 1286.200 (2009).

¶ 33    Section 1286.230 of the regulations provides in pertinent part:

"To ensure the continued accuracy of approved evidentiary instruments, a BAT or automated system shall perform accuracy checks.

a) Checks shall be performed at least once every 62 days.

b) Checks shall consist of at least two tests of the instrument in which the instrument quantitates a reference sample.

c) Approved evidentiary instruments must quantitate a reference sample within 10 percent of the reference sample's value, as adjusted for environmental factors.

d) The accuracy check results shall be recorded in the instrument's logbook or internal memory, or in the central repository. The automatic accuracy checks or accuracy checks performed remotely will not be entered in the logbook. If the accuracy check was performed by a BAT at the instrument location, the accuracy check results shall be recorded in the instrument's logbook." 20 Ill. Adm. Code 1286.230 (2011).

"Thus, the plain and ordinary language of section 1286.230 indicates that a [Breathalyzer] machine must be checked at least once every 62 days or it will not be considered accurate." *Clairmont*, 2011 IL App (2d) 100924, ¶ 19.

¶ 34    In discussing the third *Orth* factor, this court has held that to meet the foundational requirement that the Breathalyzer machine was tested for accuracy and met the accuracy tolerance described in the regulations, the State need not present evidence at trial showing the actual accuracy test results; rather, the State needs only to show that the Breathalyzer machine was inspected and certified as accurate within the time prescribed in the regulations and that the machine does not exhibit any malfunction at the time of defendant's test. See *People v. Caruso*,

201 Ill. App. 3d 930, 941 (1990); *People v. Kilpatrick*, 216 Ill. App. 3d 875, 881 (1991). Failure to comply with the regulations renders the result of the Breathalyzer test unreliable and, thus, inadmissible. *Clairmont*, 2011 IL App (2d) 100924, ¶ 12.[2]

¶ 35    Defendant here argues that the State failed to meet the foundational requirement of showing that the Breathalyzer machine was certified as accurate within the required time-frame, specifically, within 62 days prior to defendant's test. Our review is *de novo*. See *People v. Eagletail*, 2014 IL App (1st) 130252, ¶ 19.

¶ 36    In support of his argument, defendant notes that although the electronic certification admitted into evidence states that accuracy tests were conducted by Illinois State Police on defendant's Breathalyzer test results on March 1, 2010, and April 1, 2010 (within 62 days prior to and after defendant's test), it merely lists the numerical results of the accuracy tests without providing any interpretation of those results. The electronic certification does not state that the Breathalyzer machine passed the accuracy tests, performed within the accuracy tolerance, and was, in fact, accurate. The State provided no evidence at trial, and makes no argument on appeal, regarding the meaning of the numbers in the electronic certification.

¶ 37    Defendant further notes that Officer Barber, who administered the Breathalyzer test to defendant on March 19, 2010, testified he does not know how the Breathalyzer machine works, he was not present when the Illinois State Police tested it for accuracy on March 1, 2010 and April 1, 2010, and he does not know how the accuracy tests were conducted. No other witness testified to the accuracy of the Breathalyzer test results.

---

[2]    The results of a Breathalyzer test may be admitted if the State establishes substantial compliance with the regulations. *People v. Olson*, 2013 IL App (2d) 121308, ¶ 15. Substantial compliance is found where the deviation from the regulations neither affects the reliability of the Breathalyzer test nor prejudices defendant. *Id*. The State makes no substantial compliance argument here.

¶ 38    Defendant contends that on this record, the State failed to establish the foundational requirement that his Breathalyzer test results were certified as accurate at least once within 62 days prior to his test; defendant further contends that in the absence of a proper foundation, his Breathalyzer test results should not have been admitted and his conviction should be reversed because there was no other evidence of his alcohol concentration.

¶ 39    We agree with defendant.  The electronic certification admitted into evidence contains raw data from the accuracy tests conducted electronically by the Illinois State Police on March 1, 2010, and April 1, 2010, but it provides no interpretation of that data, without which we are unable to discern whether the Breathalyzer test performed within the accuracy tolerance and was certified as accurate for those dates.  The Illinois State Police who conducted the accuracy testing electronically, and who could have testified as to whether the Breathalyzer machine was certified as accurate on those dates, were not called to testify at trial.  The Keeper of Records who provided the electronic certification to the trial court was not called to testify.  Nor was any other evidence or testimony admitted regarding whether the Breathalyzer machine was certified as accurate on March 1, 2010, and April 1, 2010.  Instead, the State called Officer Barber, who was not a member of the Illinois State Police and who was not involved with the officers' testing of the Breathalyzer machine.  Officer Barber testified the Breathalyzer machine was working properly on the date he administered defendant's test (March 19, 2010), as evidenced by the .000 reading it gave after self-calibrating, but he *never* testified to the results of the accuracy tests conducted electronically by the Illinois State Police on March 1, 2010, and April 1, 2010.  As discussed earlier in this opinion, a proper foundation for the admissibility of Breathalyzer test results requires a showing that the Breathalyzer machine was functioning properly on the date of the test *and* that it was certified for accuracy within the time prescribed in the regulations

(*Caruso*, 201 Ill. App. 3d at 941); the regulations currently require that the Breathalyzer machine be tested for accuracy not more than 62 days prior to the test. Officer Barber's testimony addressed only one of the foundational elements, the functioning of the Breathalyzer machine on the date of defendant's test, but did not address the remaining foundational element, the accuracy certification within 62 days prior to the test.

¶ 40    In the absence of any evidence that defendant's Breathalyzer test results were certified as accurate within 62 days prior to defendant's test, as required by the applicable regulations, the State failed to establish a proper foundation for the admission of the Breathalyzer test results and the trial court erred by admitting it into evidence. We must reverse defendant's conviction of driving with an alcohol concentration of 0.08 or more because without the Breathalyzer test results, there was no evidence of his alcohol concentration at the time of his accident.

¶ 41    For the foregoing reasons, we reverse defendant's conviction of driving with an alcohol concentration of 0.08 or more. As a result of our disposition of this case, we need not address the other arguments on appeal, including whether or not the electronic certification was admissible as a self-authenticating business record.

¶ 42    Reversed.