# Illinois Official Reports

## Appellate Court

---

### *People v. Crump*, 2018 IL App (3d) 160124

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. XAVIER D. CRUMP, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-16-0124 |
| Rule 23 order filed<br>Motion to publish<br>allowed<br>Opinion filed | September 28, 2018<br><br>October 17, 2018<br>October 17, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Will County, Nos. 15-DT-636, 15-TR-33589; the Hon. Raymond A. Nash, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, Peter A. Carusona, and James Wozniak, of State Appellate Defender's Office, of Ottawa, for appellant.<br><br>James W. Glasgow, State's Attorney, of Joliet (Patrick Delfino, David J. Robinson, and Mark A. Austill, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

JUSTICE SCHMIDT delivered the judgment of the court, with opinion.
                    Presiding Justice Carter and Justice Holdridge concurred in the judgment and opinion.

## OPINION

¶ 1    Defendant, Xavier D. Crump, appeals his conviction for driving with an alcohol concentration of 0.08 or higher (625 ILCS 5/11-501(a)(1) (West 2014)). He asserts that the trial court erred in admitting the results of his breath test because (1) the State failed to lay the proper foundation to admit certain exhibits as business records and (2) regardless of whether the records were properly admitted, they were insufficient to certify the proper functioning of the breath test machine. We affirm.

¶ 2                              I. BACKGROUND

¶ 3    In May 2015, the State charged defendant with driving under the influence of alcohol (*id.* § 11-501(a)(2)), driving with an alcohol concentration of 0.08 or more (*id.* § 11-501(a)(1)), and improper parking on a highway (*id.* § 11-1303).

¶ 4    The State presented the following evidence at defendant's November 2015 bench trial.

¶ 5    Illinois State Trooper Brian Frank testified as follows. While on patrol at approximately 7:50 a.m. on May 10, 2015, he observed a vehicle parked along the right shoulder of the I-55 southbound ramp. He approached the vehicle and saw a man, who he identified as defendant, asleep in the driver's seat. He could not recall whether the car was running but the keys were in the ignition. Upon waking, defendant's eyes appeared "red, glassy and bloodshot," and Frank smelled "a strong odor of an alcoholic beverage emitting from his breath." Defendant stated that he drank two beers and two mixed drinks at a bar the night before.

¶ 6    Trooper Frank asked defendant to perform standard field sobriety tests, including the horizontal gaze nystagmus, the "walk and turn," and the "one leg stand." Defendant exhibited signs of intoxication during each test. As a result, Frank arrested defendant and transported him to the Illinois State Police headquarters. After Frank observed defendant for 20 minutes at police headquarters, defendant submitted to an "Intoxilyzer" (Intox) breath test. Frank is certified in administering the breath test. The results of that test indicated that defendant had a blood alcohol content of 0.131. Frank then issued defendant citations for driving under the influence of alcohol, driving with an alcohol concentration of 0.08 or more, and improper parking on a highway.

¶ 7    As proof of defendant's intoxication, the trial court, over defense counsel's objections, admitted a number of the State's exhibits under the business-record exception to the hearsay rule. Specifically, State's exhibit No. 3 included a notarized "verified certification" letter, signed by the "Keeper of Records" of the Alcohol and Substance Testing Section of the Illinois State Police Academy, indicating that accuracy checks were conducted on the Intox EC/IR-II breath test machine at issue on May 1 and June 5, 2015, and its corresponding attachments (electronic certification). The attachments included printouts of an "Intox EC/IR-II Scheduled Certification" that indicated a test date of May 1, 2015, and an "Intox EC/IR-11 Certification

check" that indicated a test date of June 5, 2015, both of which contained the following notations: "System Check: Passed" and "Test Status: Success." State's exhibit No. 4 was an "Intox EC/IR-II Subject Test," dated May 10, 2015, indicating that Trooper Frank administered the test to defendant, stating that defendant blew a 0.13 (the third decimal digit is blacked out), and containing "System Check: Passed" and "Test Status: Success" notations. Trooper Frank identified exhibit No. 4 as a printout of defendant's breath test, created in the regular course of business. State's exhibit No. 5 was the breath analysis instrument logbook from the Illinois State Police headquarters, showing defendant's test results from the breath test machine as 0.131. It also contained a June 5, 2015, entry with a "certified accurate" notation by a Trooper D. Sheldon. Trooper Frank identified exhibit No. 5 as a logbook for the Intox breath test machine kept in the regular course of business.

¶ 8    At the conclusion of the State's evidence, defense counsel moved for a directed verdict, again, asserting that the documents related to the breath test machine lacked proper foundation. The trial court denied the motion. Following arguments, the court found defendant guilty of driving with an alcohol concentration of 0.08 or more and improper parking, but not guilty of driving under the influence of alcohol. The court recognized its "somewhat incongruous conclusions," especially since the breath test results supported a finding of guilt on both charges, but the court opined, "While I certainly see evidence of impairment, I also see considerable evidence of non impairment that would, in regards to driving under the influence (a)(2) charge, would cause me pause." In particular, the court noted that defendant exhibited "reasonable balance and physical acuity" during the field sobriety tests such that the court "could not draw a great deal of overwhelming weight to any evidence of impairment from the field sobriety tests."

¶ 9    Defense counsel timely filed a motion to reconsider the verdict or, alternatively, for a new trial. Counsel, again, asserted that the trial court erred in admitting the exhibits relating to the breath test machine because the State failed to lay the proper foundation. The court denied the motion. Thereafter, it sentenced defendant to 24 months' court supervision, fines, court costs, and 60 hours of community service.

¶ 10    Defendant appeals.

¶ 11                                    II. ANALYSIS

¶ 12    Defendant asserts that the trial court erred in admitting the results of his breath test. Although defendant specifically delineates only one issue on appeal, his argument section presents two issues. Specifically, he argues—in reverse order—that the results of his breath test should not have been admitted because (1) the State failed to lay the proper foundation to admit the electronic certification as a business record and (2) regardless of whether the electronic certification records were properly admitted business records, they were "insufficient to certify the proper functioning of the breathalyzer machine."

¶ 13                              A. Standard of Review

¶ 14    At the outset, the parties disagree on the appropriate standard of review. Defendant asserts that the issue of whether the State laid a proper foundation to introduce the results of his breath test is a legal question subject to *de novo* review. In support, he cites *People v. Eagletail*, 2014 IL App (1st) 130252, ¶ 19, and *People v. Claudio*, 371 Ill. App. 3d 1067, 1069 (2007), both of which held that a *de novo* standard of review applies in determining whether the State met the

foundational requirements for the introduction of breath tests results as set forth in *People v. Orth*, 124 Ill. 2d 326 (1988). In contrast, the State cites *People v. Torruella*, 2015 IL App (2d) 141001, ¶ 24, in support of its contention that an abuse of discretion standard applies. In *Torruella*, the court found the abuse of discretion standard appropriate for determining whether the State satisfied the foundational requirements of the business records exception to the hearsay rule. *Id.*

¶ 15 Because we are actually presented with two separate issues here, both standards of review are applicable. First, we will determine whether the trial court abused its discretion in admitting the electronic certification records proffered by the State. A trial court abuses its discretion only when its ruling is " 'arbitrary, fanciful or unreasonable' or 'no reasonable [person] would take the view adopted by the trial court.' " *Eagletail*, 2014 IL App (1st) 130252, ¶ 26 (quoting *People v. Donoho*, 204 Ill. 2d 159, 182 (2003)). If we find the records were properly admitted, we will then consider *de novo* whether they establish that the breath test machine at issue "was tested for accuracy and working properly on the date the test was administered to the [d]efendant" such that the results of defendant's breath test were properly considered.

¶ 16 <center>B. Admissibility of the "Certification Records"</center>

¶ 17 Defendant maintains that the State failed to lay a proper foundation for the admission of the electronic certification records. The State disagrees, asserting that the records were self-authenticating business documents under Illinois Rules of Evidence 902 (eff. Jan. 1, 2011) and 803 (eff. Apr. 26, 2012). Notably, defendant does not argue that the State failed to lay the proper foundation to admit the printout of his test results or the logbook documenting his result. Thus we consider only the propriety of admitting the electronic certification records, *i.e.*, State's exhibit No. 3.

¶ 18 Illinois Rule of Evidence 902 (eff. Jan. 1, 2011), provides that certain evidence is self-authenticating and, as such, extrinsic evidence of its authenticity is not required where the document constitutes, in relevant part:

> "(1) Domestic Public Documents Under Seal. A document bearing a seal purporting to be that of the United States, or of any State, district, Commonwealth, territory, or insular possession thereof, or the Panama Canal Zone, or the Trust Territory of the Pacific Islands, or of a political subdivision, department, officer, or agency thereof, and a signature purporting to be an attestation or execution.
>
> <center>* * *</center>
>
> (11) Certified Records of Regularly Conducted Activity. The original or a duplicate of a record of regularly conducted activity that would be admissible under Rule 803(6) if accompanied by a written certification of its custodian or other qualified person that the record
>
>> (A) was made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of these matters;
>>
>> (B) was kept in the course of the regularly conducted activity; and
>>
>> (C) was made by the regularly conducted activity as a regular practice."

In turn, Illinois Rule of Evidence 803(6) (eff. Apr. 26, 2012), which governs records of regularly conducted business activities, provides:

<center>- 4 -</center>

"A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness, but not including in criminal cases medical records. The term 'business' as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit."

¶ 19    After reviewing the record, we find that the trial court did not abuse its discretion in admitting the electronic certification documents. Initially, we reject defendant's contention that the records were not admissible because no one "familiar with the business and its mode of operation testif[ied] at trial as to the manner in which the document was prepared." Self-authenticating business records do not require testimony at trial. Rather, self-authenticating business records need only be accompanied by written certification from the record's custodian or other "qualified person" attesting to the three foundational requirements for business records described above. See Ill. R. Evid. 902(11) (eff. Jan. 1, 2011).

¶ 20    As indicated, the "verified certification" letter at issue here contains an official seal of the Illinois State Police, is signed by the "Keeper of Records" of the Alcohol and Substance Testing Section of the Illinois State Police Academy, and indicates that the accuracy checks—which are attached to the letter—were conducted on the Intox EC/IR-II breath test machine at issue on May 1 and June 5, 2015. The letter also states that (1) "[t]he accuracy checks were made at or near the time of occurrence of the matters set forth," (2) "[t]he accuracy checks were kept in the course of the regularly conducted activity," and (3) "[t]he accuracy checks were made by the regularly conducted activity as a regular practice." Accordingly, the State satisfied the foundational requirements necessary for admitting the electronic certification as self-authenticated business records.

¶ 21    We also reject defendant's assertion in his reply brief that the records should not have been admitted because "[t]he method and circumstances of preparation of the 'verified certification' were untrustworthy." In support of his contention, defendant notes that (1) the May 1, 2015, "Scheduled Certification" "does not chronicle who created the document," (2) the June 5, 2015, "Certification Check" does not explain who operator "Sheldon" is, (3) the logbook does not contain an entry related to an accuracy check being conducted on May 1, 2015, and (4) the "purported result of [his breath] test is blacked out at the third digit which again calls into question all [of] the documents' trustworthiness." As indicated above, defendant did not challenge the admission of the logbook or the result of his breath test in his initial brief and may not do so in his reply brief. See Ill. S. Ct. R. 341(h)(7) (eff. Nov. 1, 2017) (points not argued in initial brief shall not be raised in the reply brief). Moreover, defendant fails to elaborate on how the absence of certain information on the electronic certification documents renders them untrustworthy. As such, we find no error in the admission of the electronic certification documents.

¶ 22                  C. Foundation Requirements for the Admission of Breath Test Results

¶ 23          Defendant also argues that the trial court erred in admitting the results of his breath test because the State "failed to certify that the machine from which [his] test results were derived was accurate and properly calibrated at the time of [his] test."

¶ 24          The results of a breath test may be admitted if the State can show:

> "(1) evidence that the tests were performed according to the uniform standard adopted by the Illinois Department of Public Health, (2) evidence that the operator administering the tests was certified by the Department of Public Health, (3) evidence that the machine used was a model approved by the Department of Health, was tested regularly for accuracy, and was working properly, (4) evidence that the motorist was observed for the requisite 20 minutes prior to the test and, during this period, the motorist did not smoke, regurgitate, or drink, and (5) evidence that the results appearing on the 'printout' sheet can be identified as the tests given to the motorist." *Orth*, 124 Ill. 2d at 340.

Only the third foundational factor is at issue here, *i.e.*, whether the breath test machine was tested for accuracy and working properly on the date it was administered to defendant. Defendant raises no issue regarding whether the breath test machine was a model approved by the Department of Health.

¶ 25          To establish the accuracy of the breath test machine and that it worked properly on the date of the test, the State must show that "the [accuracy] test was performed in accordance with section 11-501.2(a) of the Illinois Vehicle Code (625 ILCS 5/11-501.2(a) (West 2008)) and the regulations promulgated by the Illinois Department of State Police." *People v. Clairmont*, 2011 IL App (2d) 100924, ¶ 12 (citing *Orth*, 124 Ill. 2d at 340). "In pertinent part, section 11-501.2(a) authorizes admission of the chemical analysis of a person's breath in the prosecution of the offense of driving with an alcohol concentration of 0.08 or more" so long as the breath test was performed " 'according to standards promulgated by the Department of State Police.' " *People v Smith*, 2015 IL App (1st) 122306, ¶ 32 (quoting 625 ILCS 5/11-501.2(a)(1) (West 2010)). Section 1286.200 of the regulations of the Department of State Police (Department) provides for a rebuttable presumption that a breath test machine accurately recorded the subject test

> "if the following four conditions are met: (1) the Breathalyzer machine was approved pursuant to section 1286.210 of the regulations (20 Ill. Adm. Code 1286.210 (2011) (not pertinent here)); (2) an accuracy check was conducted prior to defendant's test that was within the 'accuracy tolerance' described in section 1286.230 of the regulations; (3) no accuracy check was performed after defendant's test or an accuracy check was performed after defendant's test and it was within the accuracy tolerance; and (4) defendant's test was conducted not more than 62 days after the last accuracy check." *Smith*, 2015 IL App (1st) 122306, ¶ 33 (citing 20 Ill. Adm. Code 1286.200 (2009)).

The Department's standards also require that either a breath analysis technician or an "automated system" perform accuracy tests "at least once every 62 days" and that the results are "recorded in the instrument's logbook or internal memory, or[, if performed remotely,] in the central repository." 20 Ill. Adm. Code 1286.230 (2011).

¶ 26    Defendant relies on *Smith*, 2015 IL App (1st) 122306, in support of his contention that the State failed to prove a necessary element for admission of his breath test result because neither the verified certification proffered by the State, nor any other evidence submitted at trial, showed that "the [breath test] machine was certified as accurate."

¶ 27    In *Smith*, the trial court allowed the State to introduce results of the defendant's Breathalyzer test, which resulted in his conviction for driving with an alcohol concentration of 0.08 or more. *Id.* ¶¶ 21, 24. Specifically, the State introduced a notarized letter, signed by the "Keeper of Records" of the Illinois State Police Alcohol and Substance Testing Section, indicating "the Breathalyzer machine had been tested for accuracy on March 1, 2010, and April 1, 2010." *Id.* ¶ 4. The accuracy tests attached to the letter provided numerical data but provided no interpretation of that data and failed to state whether the Breathalyzer machine passed the accuracy tests. *Id.*

¶ 28    On appeal, the defendant argued that the trial court erred in allowing the result of his Breathalyzer test into evidence because the State failed to lay an adequate foundation for its admission. *Id.* ¶ 29. He maintained

> "that although the electronic certification admitted into evidence state[d] that accuracy tests were conducted by the Illinois State Police on defendant's Breathalyzer machine on March 1, 2010, and April 1, 2010 (within 62 days prior to and after defendant's test), it merely list[ed] the numerical results of the accuracy tests without providing any interpretation of those results." *Id.* ¶ 40.

He further noted that "[t]he electronic certification does not state that the Breathalyzer machine passed the accuracy tests, performed within the accuracy tolerance, and was, in fact, accurate," nor did anyone testify as to the accuracy of the Breathalyzer test results. *Id.*

¶ 29    The appellate court agreed with the defendant, noting that although "[t]he electronic certification admitted into evidence contains raw data from the accuracy tests *** it provides no interpretation of that data, without which we are unable to discern whether the Breathalyzer machine performed within the accuracy tolerance and was certified as accurate for those dates." *Id.* ¶ 43. The court held:

> "In the absence of any evidence that defendant's Breathalyzer machine was certified as accurate within 62 days prior to defendant's test, as required by the applicable regulations, the State failed to establish a proper foundation for the admission of the Breathalyzer test result and the trial court erred by admitting it into evidence." *Id.* ¶ 44.

¶ 30    We find this case distinguishable from *Smith*. Here, the accuracy checks attached to the verified certification letter contain more than just raw data. In particular, the May 1, 2015, "Scheduled Certification"—likely an automated system check that would be stored in the central repository rather than the breath analysis instrument logbook—indicates a "dry gas target" of .079, and contains the following notations: "System Check: Passed" and "Test Status: Success." Likewise, the June 5, 2015, certification performed by "Sheldon" indicates a "dry gas target" of .080 and also contains "System Check: Passed" and "Test Status: Success" notations. In addition, Trooper Sheldon certified the breath test machine as accurate in the logbook on June 5, 2015.

¶ 31    In sum, the State's exhibits, which were properly admitted into evidence, clearly show that the Department regularly tested the breath test machine for accuracy and that it worked

properly on the date defendant submitted to the test. As such, the results of defendant's breath test were properly admitted.

¶ 32                                         III. CONCLUSION

¶ 33            For the foregoing reasons, we affirm the judgment of the circuit court of Will County.

¶ 34            Affirmed.