# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*Village of Bull Valley v. Winterpacht*, 2012 IL App (2d) 101192

| | |
|---|---|
| Appellate Court Caption | THE VILLAGE OF BULL VALLEY, ILLINOIS, Plaintiff-Appellee, v. PAQUITA WINTERPACHT, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-10-1192 |
| Filed | March 28, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's conviction for driving with a blood alcohol content of 0.08 or above was upheld over her contention that the State failed to present retrograde extrapolation testimony that her blood alcohol content was at or above 0.08 at the time she was driving, since such evidence was not required where blood tests taken two hours after she crashed her car into a ditch showed an alcohol concentration of twice the statutory limit and those facts corroborated the reasonable inference that when she crashed her car into a ditch, her blood alcohol level was similar to, if not higher than, what it was when she was tested. |
| Decision Under Review | Appeal from the Circuit Court of McHenry County, No. 09-DT-1090; the Hon. Gordon E. Graham, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Thomas A. Lilien and Linda A. Johnson, both of State Appellate
Defender's Office, of Elgin, for appellant.

Francis X. Gosser, of Woodstock, for appellee.

Panel

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Justices Bowman and Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1 Defendant, Paquita Winterpacht, appeals from her conviction of driving with a blood alcohol level of 0.08 or above (625 ILCS 5/11-501(a)(1) (West 2008)). She contends that there was insufficient evidence to convict her when her blood alcohol level was 0.182 two hours after she was driving and there was no extrapolation testimony about what the level was when she was driving. We affirm.

¶ 2 I. BACKGROUND

¶ 3 On September 21, 2009, defendant was charged by complaint with driving under the influence of alcohol (625 ILCS 5/11-501(a)(2) (West 2008)), failure to reduce speed to avoid an accident (625 ILCS 5/11-601(a) (West 2008)),[1] and driving with a blood alcohol level of 0.08 or above. In September 2010, a jury trial was held.

¶ 4 At trial, the State presented testimony that, on September 21, 2009, at about 8 p.m., defendant was seen driving a vehicle that swerved into the wrong lane of traffic, swerved onto the shoulder of the road, and continued to swerve once it turned onto another road. Defendant's vehicle later went off the road and into a ditch. At 8:23 p.m., paramedics arrived at the scene.

¶ 5 Patrick Ryan, a paramedic at the scene, reported that defendant was slurring her speech and not answering questions appropriately. Defendant told Ryan that she had been drinking hard alcohol, and Ryan observed that there was a smell of alcohol in the ambulance after defendant was placed in it. Another paramedic also reported a smell of alcohol in the ambulance. No alcohol containers were found at the scene.

¶ 6 At 8:55 p.m., Joy Hendricks, a nurse at the hospital, saw defendant. Defendant did not know what day it was or where she was. Defendant admitted to alcohol use and said that she

---

[1]Although the failure-to-reduce-speed charge is mentioned in the record, a complaint reflecting that is not included. From notations in the record, it appears that it was a traffic citation.

had come in a cab to the hospital from a blues bar. However, Hendricks said that defendant was alert and that her condition improved while she was at the hospital. The attending physician provided similar testimony, stating that, over the course of time, defendant was more and more able to provide information. The physician stated that defendant's mental condition was consistent with that of a person who had a concussion, but he also opined that defendant was under the influence of alcohol.

¶ 7   The arresting officer, Ryan Rodriguez, first encountered defendant at the hospital sometime after 9 p.m. and observed that her speech was slow and slurred and that she was lethargic in responding to questions from hospital staff. He heard defendant state that she had been drinking. After the hospital staff completed their intake questions, Rodriguez smelled a strong odor of alcohol on defendant's breath and observed that she continued to have slow, lethargic, and slurred speech, both at the hospital and when he was transporting her to the county jail.

¶ 8   Two blood draws were taken from defendant at around 10:10 p.m. The laboratory technician who tested the blood provided information about the machine used in the testing and opined, based on the tests, that the blood had an alcohol content of 0.182.

¶ 9   The jury found defendant not guilty of driving under the influence of alcohol and failure to reduce speed to avoid an accident, but found her guilty of driving with a blood alcohol level of 0.08 or above. Defendant's motion for a judgment of acquittal notwithstanding the verdict was denied, and she was sentenced to 40 days in jail and 2 years' conditional discharge. She appeals.

¶ 10                                    II. ANALYSIS

¶ 11   Defendant contends that there was insufficient evidence to convict her, because the State failed to show what her blood alcohol content was when she was driving. She argues that retrograde extrapolation testimony was required in order to show that her blood alcohol content was at or above 0.08 at that time.

¶ 12   "A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt." *People v. Collins*, 106 Ill. 2d 237, 261 (1985). In considering a challenge to the sufficiency of the evidence, it is not the function of this court to retry the defendant. *Id.* Rather, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The trier of fact must assess the credibility of the witnesses and the weight of their testimony, resolve conflicts in the evidence, and draw reasonable inferences from that evidence, and this court will not substitute its judgment for that of the trier of fact on these matters. *People v. Ortiz*, 196 Ill. 2d 236, 259 (2001). "Discrepancies, omissions and bias go to the weight of the testimony to be evaluated by the trier of fact." *People v. Rodriguez*, 408 Ill. App. 3d 782, 794 (2011).

¶ 13   When there is a delay between when a defendant was driving and when blood is drawn, extrapolation evidence might be necessary when the blood alcohol level at the time of the test

is below the statutory limit. In such a case, extrapolation evidence may be used to show that the blood alcohol level was above the limit when the defendant was driving. See *Rice v. Merchants National Bank*, 213 Ill. App. 3d 790, 797 (1991). But no such evidence is necessary when the tested level is above the statutory limit. In such a case, when a reasonable amount of time elapses between when the defendant was driving and the test, extrapolation evidence is permissible but is not a foundational requirement. *Id.* Matters of delay between driving and testing go to the weight of the evidence and must be viewed in light of the circumstances surrounding the arrest. *People v. Newman*, 163 Ill. App. 3d 865, 868 (1987) (citing *People v. Kappas*, 120 Ill. App. 3d 123, 128-29 (1983)). Any concerns about the facts upon which the alcohol content is determined may be challenged on cross-examination. *Petraski v. Thedos*, 382 Ill. App. 3d 22, 32 (2008).

¶ 14    For example, in *Newman*, the jury convicted the defendant of driving with a breath alcohol concentration of 0.10 or more but acquitted him of driving under the influence of alcohol when his breath alcohol measured 0.13 approximately 30 minutes after an accident. On appeal, the defendant argued that it was impossible to determine from a breath test taken 30 minutes later what his breath alcohol concentration was when he was driving. However, the Third District held that, despite the jury's acquittal on the charge of driving under the influence of alcohol, evidence of the defendant's intoxication at the time of his arrest was relevant to the charge that he had an alcohol concentration of 0.10 or greater at that time. Thus, extrapolation evidence was not required, and the court affirmed. *Newman*, 163 Ill. App. 3d at 868; see also *People v. Malik*, 113 Ill. App. 3d 206, 212 (1983) (extrapolation evidence on rates of absorption not required when defendant's breath alcohol content was twice the statutory limit one hour after driving).

¶ 15    Here, although defendant does not specifically mention absorption rates, her theory is that, absent extrapolation evidence, the jury could not determine that her blood alcohol content was at least 0.08 when she was driving. But, given that the tests were taken approximately two hours after she was driving and still showed a result over twice the statutory limit, extrapolation evidence was not required. Instead, the jury could make reasonable inferences from the evidence, which included evidence that defendant had admitted to drinking and had shown signs of intoxication that improved over time. Those facts corroborated the reasonable inference that, at the time of the accident, defendant's blood alcohol level was similar to, if not higher than, what it was tested at two hours later. That evidence was sufficient to find defendant guilty beyond a reasonable doubt. See, *e.g.*, *Malik*, 113 Ill. App. 3d at 212.

¶ 16                                        III. CONCLUSION

¶ 17    The evidence was sufficient to prove defendant guilty beyond a reasonable doubt. Accordingly, the judgment of the circuit court of McHenry County is affirmed.

¶ 18    Affirmed.