# Illinois Official Reports

## Appellate Court

***People v. Torruella*, 2015 IL App (2d) 141001**

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ALEJANDRO TORRUELLA, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-14-1001 |
| Filed | August 17, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 12-DT-1196; the Hon. Bruce R. Kelsey, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Steve Klein, of Chicago, for appellant.<br><br>Robert B. Berlin, State's Attorney, of Wheaton (Lisa A. Hoffman and Colin F. Diamond, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE ZENOFF delivered the judgment of the court, with opinion.<br>Presiding Justice Schostok and Justice Spence concurred in the judgment and opinion. |

**OPINION**

¶ 1    Following a bench trial, defendant, Alejandro Torruella, was convicted of driving while the alcohol concentration in his breath was 0.08 or more (625 ILCS 5/11-501(a)(1) (West 2012)). Defendant appeals, arguing that the trial court erred in admitting as a business record a report of the accuracy checks performed on the instrument used to administer his breath test. He also challenges the sufficiency of the evidence. For the following reasons, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3    On April 8, 2012, at approximately 4:29 a.m., Officer Jonathan Joyce of the Oakbrook Terrace police department conducted a traffic stop of defendant's vehicle. After Joyce had defendant perform field sobriety tests, he placed defendant under arrest for DUI. At the police station, a breath test revealed that defendant's breath alcohol concentration (BAC) was 0.09. Defendant was charged with driving with a BAC of 0.08 or more (625 ILCS 5/11-501(a)(1) (West 2012)), driving under the influence of alcohol (DUI) (625 ILCS 5/11-501(a)(2) (West 2012)), and speeding (625 ILCS 5/11-601(b) (West 2012)).

¶ 4    Prior to trial, pursuant to Illinois Rule of Evidence 902(11) (eff. Jan. 1, 2011), the State filed a notice of intent to introduce as business records the accuracy checks that had been performed on the breath test instrument used on defendant. The State also filed a motion *in limine* seeking admission of the accuracy checks as business records under Illinois Rule of Evidence 803(6) (eff. Apr. 26, 2012). The motion indicated that the instrument was "an Intox EC/IR, serial number 04268," and that it was regularly tested for accuracy. Attached to the motion was a verified certification dated April 16, 2014, signed by Nancy Easum, the keeper of records for the alcohol-and-substance-testing section of the Illinois State Police Academy. The certification stated that "the attached accuracy checks regarding ECIR I, Serial Number 04268 *** dated April 1 and May 1, 2012, are true and accurate copies of said documents and that the originals were made in the normal course of business." It further stated that the accuracy checks were (1) made at or near the time of the occurrence of the matters set forth, (2) kept in the course of the regularly conducted activity, and (3) made by the regularly conducted activity as a regular practice.

¶ 5    Attached to the certification was a document entitled "IntoxNet MIS Report" that indicated that it had been generated on April 16, 2014. The report listed accuracy checks performed on "EC/IR Serial # 04268" on April 1 and May 1, 2012. Data regarding each accuracy check was listed, including the date, time, and result of each check.

¶ 6    On June 19, 2014, the trial court heard argument on the motion. Defendant argued that the "IntoxNet MIS Report" that was generated on April 16, 2014, was not "made at or near the time" of the accuracy checks, as Rules of Evidence 803(6) and 902(11) required, but was generated two years after the accuracy checks were performed. The court granted the State's motion *in limine*, ruling that the accuracy checks, not the report generated in April 2014, were the business records that the State was seeking to admit.

¶ 7    The matter proceeded to a bench trial. Joyce was the State's only witness. He testified that he conducted a traffic stop of defendant's vehicle after observing it weaving and

speeding at 50 miles per hour in a 35-mile-per-hour zone. After the officer approached the car, he observed defendant's bloodshot and glassy eyes, slurred speech, and odor of alcohol. He performed a horizontal gaze nystagmus (HGN) test and noticed that defendant had "a slight sway." He asked defendant to perform a "walk-and-turn test," which defendant failed by missing several of the heel-to-toe steps by one to two inches, taking 10 steps instead of the requested 9 steps, and losing his balance at the end of the test. The officer next asked defendant to perform the "one-leg-stand test," which defendant passed, although he "swayed from right to left for the entirety of the test." Defendant then failed the "finger-to-nose test" by missing "with his left," failing to return to the start position as instructed, and visibly swaying from right to left. Upon failing the tests, defendant stated that he had consumed four to five beers and a shot of liquor. Defendant further stated that he was driving home from Wrigleyville and had stopped for food prior to driving home.

¶ 8 Joyce testified that he placed defendant under arrest and transported him to the police department, where he observed defendant for 20 minutes prior to administering a breath test. The officer was a "certified breath operator" and had administered over 200 breath tests. During the 20-minute observation period, defendant did not vomit, belch, regurgitate, or place anything in his mouth. Defendant voluntarily completed the breath test, and there were no machine malfunctions. The State moved to admit into evidence People's Exhibit No. 2, which was Easum's verified certification and the attached "IntoxNet MIS Report."

¶ 9 Defense counsel renewed his objection that the "IntoxNet MIS Report" did not satisfy Rules of Evidence 803(6) and 902(11) in that it was not made at or near the time of the accuracy checks. Counsel also objected on the basis that the accuracy checks did not show compliance with section 1286.230 of the Illinois Administrative Code (20 Ill. Adm. Code 1286.230 (2011)), which requires that during accuracy checks "[a]pproved evidentiary instruments must quantitate a reference sample within 10 percent of the reference sample's value, as adjusted for environmental factors." The court overruled the objections.

¶ 10 Joyce then testified that the breath test revealed a BAC of 0.09. He identified People's Exhibit No. 3 as a printout of defendant's test result showing a BAC of 0.09. The exhibit indicated that the test was performed at 5:18 a.m. He then identified People's Exhibit No. 4 as a copy of a page of the police department's breath analysis log. The log contained an entry for defendant's breath test on April 8, 2012, showing a result of 0.09. The officer also identified People's Exhibit No. 5 as a printout of the automated accuracy check performed on April 1, 2012. He testified that the logbook was kept in the regular course of business and that accuracy check printouts were retained in the logbook in the regular course of business. The printout for the April 1, 2012, accuracy check indicated that the system check passed. He also identified People's Exhibit No. 6 as a printout of the automated accuracy check performed on May 1, 2012, which also indicated that the system check passed. The court admitted People's Exhibit Nos. 3, 4, 5, and 6 into evidence over defendant's objections.

¶ 11 Joyce next testified that, based on his observations of defendant and on defendant's performance during the field sobriety tests, he believed that defendant was under the influence of alcohol at the time of the traffic stop. The State then played the video from the officer's squad car camera, which showed the traffic stop and the field sobriety tests.

¶ 12 On cross-examination, Joyce testified that the BAC of 0.09 was defendant's BAC at the time of the breath test at the police department, not at the time of his arrest at the scene. The officer did not ask defendant whether he had finished his last drink prior to driving his car.

Defense counsel elicited additional detail about defendant's performance on the field sobriety tests, including that defendant had failed the "finger-to-nose test" in part by touching the underside of his nose with his left hand.

¶ 13    The State rested and defendant called Mary McMurray to testify. Following questioning by defense counsel and *voir dire* by the State, the trial court certified McMurray as an expert in the areas of Intox EC/IR machines and in standardized field sobriety tests. McMurray testified that she had reviewed calibration records for the Intox EC/IR machine used for defendant's breath test. The records revealed that on March 13, 2012, the machine was calibrated and an accuracy check was performed. According to McMurray, the calibration and accuracy check were problematic because they used the same dry gas standard. McMurray testified that, when the same dry gas standard is used for a calibration and an accuracy check, any mistake made during the calibration is difficult to detect. She testified that the machine should be calibrated "using a simulator" because "[h]uman breath has moisture." She further testified that she had "nothing verifying *** the concentration" of the dry gas standard used to calibrate the instrument. If the machine is improperly calibrated, it might be inaccurate. She concluded that the March 13 calibration was "not a good calibration."

¶ 14    McMurray further testified that performing a single breath test was "not scientific." She explained that "[y]ou want reproducibility of results," which ensured "accuracy" and "precision." When McMurray began explaining that the "National Safety Council" advised using a minimum of two breath samples, the State objected, arguing that Illinois law did not require two samples. The trial court overruled the objection, but then asked defense counsel how the failure to perform two breath tests should factor into the court's decision. After counsel was unable to cite a case discussing the failure to perform two breath tests as a factor, the court stated that it would accept McMurray's testimony "for what it says" but that the testimony would not factor into its decision, because "Illinois does not recognize that a second test must be given."

¶ 15    McMurray testified that, based on her review of the calibration records, the lack of information as to where defendant was on "an alcohol curve," and her viewing of the squad car video, her opinion within a reasonable degree of scientific certainty was that there was not "adequate information" to conclude that defendant's BAC was 0.08 or above. She testified that her opinion was based in part on the consideration that "[a]ll measurements have some uncertainty" and that "using the standard uncertainty" of "plus or minus [0.]01" would put defendant's result at "[0.]08." Defense counsel then asked McMurray how her viewing of the field sobriety tests on the squad car video factored into her opinion, and the trial court sustained the State's objection. When defense counsel inquired as to the basis for the objection, the trial court asked counsel how McMurray would be able to offer expert testimony as to how defendant's performance on the field sobriety tests affected his BAC. Counsel stated that "if somebody passes field sobriety tests, they may believe they're unimpaired, therefore, under .08." The trial court reiterated that the objection was sustained.

¶ 16    On cross-examination, McMurray testified that she had not viewed the Intox EC/IR machine used for defendant's breath test. She also did not prepare a written report of any of her findings related to the case. She was paid a flat fee of $2,500 to testify and had never testified as an expert on behalf of the prosecution.

¶ 17 At the close of defendant's case, defense counsel offered Defense Exhibit No. 4 into evidence, which was a copy of the March 13, 2012, calibration record that McMurray reviewed. The trial court sustained the State's objection to the exhibit on the basis that it was irrelevant in light of the subsequent accuracy check performed on April 1, 2012.

¶ 18 The trial court found defendant guilty of speeding and of driving with a BAC of 0.08 or more (625 ILCS 5/11-501(a)(1), 11-601(b) (West 2012)) but not guilty of DUI (625 ILCS 5/11-501(a)(2) (West 2012)). Regarding the breath test, the court found that the "alcohol curve" referenced during McMurray's testimony was "a non-factor" because there was no expert testimony on the issue. The court indicated that the State had no burden "to go through that alcohol curve." The court also rejected defense counsel's argument that defendant's performance on the field sobriety tests should impact the result of the breath test.

¶ 19 Defendant filed a motion for a new trial, which was denied. The court sentenced defendant to five days in the Du Page County jail and two years of conditional discharge. Defendant timely appealed.

¶ 20                                            II. ANALYSIS

¶ 21 On appeal, defendant contends that the trial court erred in admitting the accuracy check records under the business records exception to the hearsay rule and in disregarding "the substance and weight" of portions of McMurray's testimony. Defendant also challenges the sufficiency of the evidence, arguing that (1) the State failed to prove that his BAC was 0.08 or greater when he was driving and that (2) the court failed to consider evidence of his sobriety when addressing the issue of his BAC. We address each argument in turn.

¶ 22                                   A. Accuracy Check Records

¶ 23 Defendant first argues that the accuracy check records reflected in People's Exhibit No. 2 did not meet the requirements of Rules of Evidence 803(6) and 902(11), which allow for the admission of business records as an exception to the hearsay rule. He contends that the records did not satisfy the rules' requirement that they be "made at or near the time of" the recorded events, because the "IntoxNet MIS Report" attached to Easum's certification was generated on April 16, 2014, two years after the accuracy checks were performed.

¶ 24 Defendant improperly identifies our standard of review for this issue as *de novo*. He cites *City of East Peoria v. Palmer*, 2012 IL App (3d) 110904, ¶ 50, which indicates that "[a] court's initial determination of whether a particular statement constitutes hearsay is a legal determination that we review *de novo* on appeal." Here, the issue is not whether the accuracy checks were hearsay, but whether the State satisfied the foundational requirements of the business records exception to the hearsay rule, which we review for an abuse of discretion. See *People v. Lombardi*, 305 Ill. App. 3d 33, 42 (1999). A trial court abuses its discretion only when its ruling is arbitrary, fanciful, or unreasonable, or when no reasonable person would take the trial court's view. *People v. Anderson*, 367 Ill. App. 3d 653, 664 (2006).

¶ 25 Defendant has not shown that the trial court abused its discretion. Section 11-501.2 of the Illinois Vehicle Code provides that, in a prosecution for DUI, the result of an alcohol breath test is admissible if, among other requirements, the test was performed according to standards promulgated by the Department of State Police. 625 ILCS 5/11-501.2 (West 2012). The Department's standards require that either a breath analysis technician or an "automated

system" perform "accuracy checks" of a breath test instrument at least once every 62 days. 20 Ill. Adm. Code 1286.230 (2011). The accuracy check results "shall be recorded in the instrument's logbook or internal memory, or in the central repository." 20 Ill. Adm. Code 1286.230 (2011). The Department's standards define an "Accuracy Check Record" in pertinent part as "the data recorded in a logbook or stored in memory when an accuracy check is performed on an approved evidentiary instrument." 20 Ill. Adm. Code 1286.10 (2009).

¶ 26     Although the "IntoxNet MIS Report" attached to Easum's certification was generated on April 16, 2014, it listed the accuracy check records dated April 1 and May 1, 2012. In her certification, Easum indicated that the accuracy check records (not the "IntoxNet MIS Report") "were made at or near the time *** of the matters set forth" in the records. The records themselves indicated that the accuracy checks performed on April 1 and May 1, 2012, were automatic. That the "IntoxNet MIS Report" listing the accuracy check records was generated two years after the records were created did not render the records inadmissible as business records. See *People v. Davis*, 322 Ill. App. 3d 762, 766 (2001) (noting that the printing of a document on the morning of trial did not disqualify it as a business record, because the "requisite foundation pertains to the time when the business made the record, not when the business retrieved it"). Accordingly, the trial court did not abuse its discretion in admitting People's Exhibit No. 2.

¶ 27     Defendant's reliance on *People v. Harris*, 2014 IL App (2d) 120990, is misplaced. In *Harris*, the court held that the State failed to lay an adequate foundation for the admission of a police department logbook under the business records exception to the hearsay rule, where the State's witness never testified that the logbook entries were completed at or near the time that the accuracy checks were performed. *Harris*, 2014 IL App (2d) 120990, ¶ 22. Here, Easum's certification indicated that the accuracy check records were "made at or near the time *** of the matters set forth." Thus, the deficiency in *Harris* is not present here.

¶ 28     Defendant also challenges the admission of the accuracy check records reflected in People's Exhibit Nos. 5 and 6, which were the printouts of the automated accuracy checks performed on April 1 and May 1, 2012, which Joyce testified were retained in the police department's logbook. Defendant notes that the exhibits "did not contain a certification like the records" in People's Exhibit No. 2, and he asserts that the trial court erred in admitting them "despite the fact that the proper foundation was not laid."

¶ 29     Defendant's argument is undeveloped and lacks merit. Rule of Evidence 803(6) provides that the foundational requirements for the admission of business records can be established through the testimony of a custodian or other qualified witness, or by certification in compliance with Rule of Evidence 902(11). Ill. R. Evid. 803(6) (eff. Apr. 26, 2012). Although the State chose to rely on Easum's certification to establish the foundation for People's Exhibit No. 2, it was not required to do the same for People's Exhibit Nos. 5 and 6. For those exhibits, it relied on Joyce's testimony that the logbook and the printouts of the automated accuracy checks were retained in the regular course of business. Defendant has not articulated any way in which Joyce's testimony was insufficient to lay a foundation for the admission of People's Exhibit Nos. 5 and 6. Consequently, we conclude that the court did not abuse its discretion in admitting the exhibits.

¶ 30     Defendant also challenges the admission of the accuracy check records on the basis that the records did not show that the breath test instrument satisfied the Department's standard

that it "quantitate a reference sample within 10 percent of the reference sample's value, as adjusted for environmental factors." 20 Ill. Adm. Code 1286.230 (2011). This argument is unpersuasive. The accuracy check records contained in People's Exhibit Nos. 2, 5, and 6 include all of the required information, including the type of instrument, instrument serial number, test date, reference sample value, and readings of the two accuracy check tests. See 20 Ill. Adm. Code 1286.10 (2009) (listing the requirements for accuracy check records). Joyce testified that the instrument passed the April 1 and May 1, 2012, accuracy checks, and People's Exhibit Nos. 5 and 6 both stated, "Accuracy Check Passed." This unrefuted evidence was sufficient to establish that the instrument satisfied the Department's testing standards.

¶ 31                                    B. McMurray's Testimony

¶ 32    Defendant argues that the trial court "improperly disregarded the substance and weight" of portions of McMurray's testimony. Some of defendant's arguments focus on the weight that the trial court gave to portions of McMurray's testimony, while others focus on the trial court's evidentiary rulings with respect to aspects of McMurray's testimony. To the extent that defendant challenges the trial court's evidentiary rulings, we review the rulings for abuse of discretion. *People v. Cortez*, 361 Ill. App. 3d 456, 468 (2005). We also note that defendant inaccurately refers to McMurray throughout his brief as "Dr. McMurray." McMurray testified that her highest level of education was a Bachelor of Science degree.

¶ 33    According to defendant, the court "erred when weighing the value" of McMurray's testimony regarding the improper calibration of the Intox EC/IR and the instrument's "uncertainty error." It is the province of the trier of fact to determine the weight and credibility to be given to expert testimony. *People v. Romano*, 139 Ill. App. 3d 999, 1006 (1985). A reviewing court will not overturn a trial court's judgment merely because it might have weighed the evidence differently. *People v. Valentin*, 347 Ill. App. 3d 946, 951 (2004).

¶ 34    Here, there is no reason for this court to disturb the trial court's decision to give little weight to McMurray's testimony regarding the improper calibration of the Intox EC/IR and the instrument's "uncertainty error." As the trial court noted, the instrument passed accuracy checks on April 1 and May 1, 2012, which was all that the Department's standards required to verify the instrument's accuracy. Furthermore, McMurray's testimony regarding the alleged improper calibration and the "uncertainty error" was difficult to understand and far from conclusive. For example, although McMurray testified that the same dry gas standard should not be used for calibration and accuracy checks, she further testified that she had "nothing verifying *** the concentration" of the dry gas standard used to calibrate and check the instrument. Thus, she had no basis to conclude that the instrument's readings of the dry gas standard were inaccurate. McMurray also offered little to no explanation as to how she determined that the "standard uncertainty" of the instrument was "plus or minus [0.]01." Even accepting her testimony regarding the uncertainty error, defendant's breath test result still exceeded the statutory limit.

¶ 35    Defendant also argues that the court erred in not allowing McMurray to testify as to how defendant's performance on the field sobriety tests factored into her opinion that defendant's BAC was not 0.08 or greater when he was driving. He contends that an expert witness "is allowed to rely on any factors relevant to the witness'[s] expertise and training that assists the witness in giving an expert opinion."

¶ 36    Defendant's argument misses the mark. Although McMurray was qualified as an expert in the areas of Intox EC/IR machines and standardized field sobriety tests, this alone did not entitle her to opine on the accuracy of defendant's breath test result in light of his performance on the field sobriety tests. Any expert testimony on this topic would have required defense counsel to lay a foundation showing that McMurray was qualified to offer such an opinion and that performance on field sobriety tests constituted facts or data "reasonably relied upon by experts in that particular field in forming opinions or inferences." *People v. Contreras*, 246 Ill. App. 3d 502, 510 (1993). When the trial court sustained the State's objection to this line of questioning, it asked defense counsel how McMurray would be able to offer expert testimony as to how defendant's performance on the field sobriety tests affected his BAC. The thrust of the court's inquiry concerned the foundation for McMurray's testimony. Counsel responded that "if somebody passes field sobriety tests, they may believe they're unimpaired, therefore, under .08." This was not sufficient to lay a foundation for McMurray's testimony, and nothing in McMurray's testimony supplied the missing foundation. Consequently, the court did not abuse its discretion in sustaining the State's objection.

¶ 37    Defendant also argues that the trial court erred in "sustaining the State's objection about Dr. McMurray's testimony regarding the scientific validity of analyzing two breath samples." The record contradicts defendant's argument. The trial court overruled the State's objection to this inquiry. After overruling the objection and allowing McMurray's testimony to stand, the trial court indicated that it would accept McMurray's testimony "for what it says" but that the testimony would not factor into its decision. The trial court's decision to give the testimony no weight fell within its role as the trier of fact, and we will not reweigh the evidence or question the trial court's credibility determinations.

¶ 38                              C. Sufficiency of the Evidence

¶ 39    We now turn to defendant's arguments relating to the sufficiency of the evidence. When presented with a challenge to the sufficiency of the evidence, it is not the function of the reviewing court to retry the defendant. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). Rather, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *Collins*, 106 Ill. 2d at 261 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The reviewing court should not substitute its judgment for that of the trier of fact, who is responsible for weighing the evidence, assessing the credibility of the witnesses, resolving conflicts in the evidence, and drawing reasonable inferences and conclusions from the evidence. *People v. Sutherland*, 223 Ill. 2d 187, 242 (2006).

¶ 40    Defendant argues that (1) the State failed to prove that his BAC was 0.08 or greater when he was driving and that (2) the court failed to consider "evidence of his sobriety" when determining whether his BAC was 0.08 or greater when he was driving.

¶ 41    Like defendant in this case, the defendant in *Village of Bull Valley v. Winterpacht*, 2012 IL App (2d) 101192, was acquitted of DUI (625 ILCS 5/11-501(a)(2) (West 2008)) but convicted of driving with a BAC of 0.08 or greater (625 ILCS 5/11-501(a)(1) (West 2008)). On appeal, the defendant argued that the evidence was insufficient where her BAC was 0.182 two hours after she was driving and there was no extrapolation testimony about what the

level was when she was driving. *Winterpacht*, 2012 IL App (2d) 101192, ¶¶ 1, 11. In affirming the conviction, this court explained the effect of the delay between the time the defendant was driving and the BAC test:

> "When there is a delay between when a defendant was driving and when blood is drawn, extrapolation evidence might be necessary when the blood alcohol level at the time of the test is below the statutory limit. In such a case, extrapolation evidence may be used to show that the blood alcohol level was above the limit when the defendant was driving. [Citation.] But no such evidence is necessary when the tested level is above the statutory limit. In such a case, when a reasonable amount of time elapses between when the defendant was driving and the test, extrapolation evidence is permissible but is not a foundational requirement. [Citation.] Matters of delay between driving and testing go to the weight of the evidence and must be viewed in light of the circumstances surrounding the arrest. [Citation.] Any concerns about the facts upon which the alcohol content is determined may be challenged on cross-examination." *Winterpacht*, 2012 IL App (2d) 101192, ¶ 13.

¶ 42     Here, defendant's breath test was performed at 5:18 a.m. and revealed a BAC of 0.09. According to Joyce, he conducted the traffic stop of defendant at approximately 4:29 a.m. Because a reasonable amount of time passed between the time defendant was driving and the breath test, and because defendant's BAC was over the statutory limit, the State was not required to present extrapolation evidence to meet its burden of proof. Rather, the delay between driving and testing went to the weight of the evidence and had to be considered in light of the circumstances surrounding defendant's arrest. Thus, the trial court was correct when it stated that the State had no burden "to go through [the] alcohol curve."

¶ 43     Defendant also contends that the trial court failed to consider "evidence of his sobriety" when determining whether his BAC was 0.08 or greater when he was driving. As "evidence of his sobriety," defendant references "his sober driving," "the lack of impairment on the field sobriety tests," and his "clear speech."

¶ 44     Defendant mischaracterizes the circumstances surrounding his arrest. Joyce testified that he conducted a traffic stop because, among other things, defendant was speeding at 50 miles per hour in a 35-mile-per-hour zone. After he approached defendant's vehicle, he observed that defendant had bloodshot and glassy eyes, slurred speech, and an odor of alcohol. Joyce further testified that defendant failed the "walk-and-turn test" and the "finger-to-nose test." Although defendant passed the "one-leg-stand test," he "swayed from right to left for the entirety of the test." Upon failing the tests, defendant admitted that he had consumed four to five beers and a shot of liquor. Defendant told the officer that he was driving home from Wrigleyville and had stopped for food prior to driving home. Although the trial court found that this evidence was insufficient to prove beyond a reasonable doubt that defendant had operated his vehicle while impaired, this does not mean that the evidence undermined the result of the breath test. See *Winterpacht*, 2012 IL App (2d) 101192, ¶ 15 (affirming a conviction of driving with prohibited BAC despite an acquittal of DUI); *People v. Newman*, 163 Ill. App. 3d 865 (1987) (same). Viewing the delay between defendant's driving and his breath test in light of the circumstances surrounding his arrest, and viewing all of the evidence in the light most favorable to the prosecution, we conclude that a rational trier of fact could have found that the State proved defendant's guilt beyond a reasonable doubt.

¶ 45                                III. CONCLUSION

¶ 46      For the reasons stated, we affirm the judgment of the circuit court of Du Page County. As part of our judgment, we grant the State's request that defendant be assessed $50 as costs for this appeal. 55 ILCS 5/4-2002(a) (West 2014); see also *People v. Nicholls*, 71 Ill. 2d 166, 179 (1978).

¶ 47      Affirmed.