2021 IL App (2d) 191059-U
No. 2-19-1059
Order filed September 21, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Boone County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 18-CF-89 |
| LAURA A. EPSTEIN, | ) ) | Honorable John H. Young, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Justice Schostok concurred in the judgment.
Justice McLaren dissented in the judgment.

**ORDER**

¶ 1    *Held*:    In a prosecution for driving under the influence, the trial court wrongly excluded evidence of defendant's blood-alcohol concentration of 0.107 measured four hours after the traffic stop. Neither the absence of extrapolation evidence nor the length of the delay between the stop and the BAC test rendered the result inadmissible.

¶ 2    The State appeals from an order of the circuit court of Boone County excluding evidence

of defendant, Laura A. Epstein's, blood alcohol content (BAC), based on analysis of blood drawn

approximately four hours after she was stopped for driving under the influence of alcohol (DUI).

Because the trial court abused its discretion in excluding the BAC evidence, we reverse and remand.

¶ 3                                    I. BACKGROUND

¶ 4      Defendant was indicted on one count of aggravated DUI based on her transporting a person under 16 years old and having previously committed a DUI offense (625 ILCS 5/11-501(d)(1)(K) (West 2016)), one count of aggravated DUI with a BAC of 0.08 or more while transporting a person under 16 years old and having previously committed a DUI offense (*id.* § 11-501(d)(1)(K)), and one count of aggravated DUI based on her driving while there was any amount of drug, substance, or compound or combination thereof in her breath or blood while transporting a person under 16 years old and having previously committed a DUI offense (*id.*).

¶ 5      Defendant filed a pretrial motion to exclude the BAC test result from her blood drawn pursuant to a search warrant. She contended that (1) because a retrograde extrapolation could not be performed on the test result to establish her BAC at the time she drove, the prejudicial effect of admitting the BAC test result substantially outweighed any probative value; and (2) there was a defective chain of custody.

¶ 6      At the hearing on defendant's motion to exclude, Deputy Rhonda Moore of the Boone County Sheriff's Department testified for the State that she mailed the blood sample taken from defendant to the state crime lab in Chicago. She explained that, although the computer-generated lab submittal form showed that the sample was sent to the crime lab in Rockford, she had merely neglected to prompt the computer to show that the sample was, in fact, mailed to the Chicago lab.

¶ 7      Dr. James O'Donnell testified for defendant. Dr. O'Donnell, a licensed pharmacist, had been qualified over 100 times in Illinois courts as an expert on alcohol effects, interpretation of

BAC test results, and alcohol-impaired driving. The trial court found him to be an expert in pharmacology and the effects of alcohol on the human body.

¶ 8     Dr. O'Donnell has conducted retrograde extrapolation hundreds of times. He described it as a method to determine a BAC earlier in time from a known BAC. Here, Dr. O'Donnell explained the extrapolation process and why it is necessary to know certain facts. In the absence of those known facts here, it was not possible to perform a reliable retrograde extrapolation and, therefore, not possible to determine defendant's BAC at the time she was driving four hours earlier.

¶ 9     Dr. O'Donnell reviewed the video of the traffic stop, the interaction between defendant and the arresting officer, the field sobriety tests, and the video of defendant sitting in the back seat of the squad car. Dr. O'Donnell also interviewed defendant.

¶ 10     Dr. O'Donnell testified that, according to the records provided to him, defendant was stopped at approximately 10 p.m., arrested at approximately 10:30 p.m., and her blood was drawn between 2 and 2:30 a.m. He opined that retrograde extrapolation could not be performed in this case, because some of the most critical information "necessary to do a full analysis [was] not available." Critically, it was not possible to determine when defendant's alcohol absorption peaked and alcohol elimination began. According to Dr. O'Donnell, based on when defendant said she last consumed alcohol, and how she acted on the video, her alcohol absorption was not complete at the time of the traffic stop. He added that the BAC test result four hours later proved only that defendant consumed alcohol, but could not prove defendant's BAC level when she was stopped four hours earlier.

¶ 11     According to Dr. O'Donnell, at 10 p.m., when defendant was stopped, she was able to stand and walk without losing her balance and speak without slurring. At 10:30 p.m., defendant was exhibiting "obvious manifestations of intoxication," such as slurred speech, altered balance, and

poorly performed field-sobriety tests. Dr. O'Donnell opined that defendant was still absorbing alcohol when she was stopped and that her peak absorption did not occur until sometime after 10:20 p.m. Dr. O'Donnell concluded there was no way to determine whether defendant's BAC was above or below 0.08 at 10 p.m., and he would "challenge any expert to [do so] with the facts in this case."

¶ 12     The State moved for a directed finding on defendant's motion to exclude. The trial court granted the State's motion as to the chain-of-custody issue but denied it as to the extrapolation issue.

¶ 13     In denying the State's motion for a directed finding, the trial court found that defendant's blood had been drawn between 2:01 a.m. and 2:30 a.m. The test showed that defendant's BAC was 0.107. The court further found that the traffic stop occurred at approximately 10 p.m.

¶ 14     The trial court found that, because it was above the statutory limit of 0.08, the BAC test result had probative value. However, relying on *People v. Floyd*, 2014 IL App (2d) 120507, the court found that, because retrograde extrapolation would be inherently unreliable, the prejudicial effect of the BAC test result substantially outweighed any probative value. Thus, the court denied the State's motion for a directed finding on that issue.

¶ 15     The State did not present evidence. In argument, the State stated that it was not planning to introduce any retrograde-extrapolation evidence at trial. Accordingly, the State asserted that defendant's challenge to the BAC test result went to its weight, not its admissibility. Defendant conceded the BAC result itself was reliable. However, defendant argued, absent her ability to challenge the BAC with evidence of reliable retrograde extrapolation, the probative value of the result obtained four hours after the traffic stop was substantially outweighed by its prejudicial effect.

¶ 16     In granting defendant's motion to exclude, the trial court noted that it was not finding that the four-hour delay in obtaining the blood sample was unreasonable. The court reiterated that the BAC test result was probative. However, the court, relying on its earlier findings in denying the State's motion for a directed finding, ruled that the BAC test result was not admissible, because its prejudicial effect substantially outweighed its probative value.

¶ 17     The State filed a motion to reconsider, which the trial court denied. The State, in turn, filed this timely appeal.

¶ 18                                    II. ANALYSIS

¶ 19     On appeal, the State contends that, notwithstanding defendant's inability to present extrapolation evidence, the BAC test result was admissible, subject only to whatever weight the trier of fact might give it. Defendant responds that, because no retrograde extrapolation could be conducted, the BAC test result obtained four hours after defendant was stopped was so prejudicial that it substantially outweighed any probative value.

¶ 20     Initially, we determine the applicable standard of review. The admissibility of evidence rests in the trial court's sound discretion, and its ruling will not be reversed absent an abuse of that discretion. *Floyd*, 2014 IL App (2d) 120507, ¶ 14. The State, relying on *People v. Crump*, 2018 IL App (3d) 160124, and *People v. Eubanks*, 2019 IL 123525, asserts that *de novo* review applies. The court in *Crump*, in deciding whether there was a proper foundation for breathalyzer results, applied a *de novo* standard. *Crump*, 2018 IL App (3d) 160124, ¶¶ 14-15. Here, however, there is no issue as to the foundational requirements for admission of the BAC test. Thus, *Crump* does not support application of a *de novo* standard. In *Eubanks*, the supreme court applied *de novo* review to the trial court's legal decision, based on stipulated facts, as to whether blood and urine evidence was obtained in violation of the fourth amendment. *Eubanks*, 2019 IL 123525, ¶ 33. Here, unlike

in *Eubanks*, the question is not one of proof to establish an alleged constitutional violation. Rather, the question here falls within the trial court's "familiar role as 'gatekeeper,' " where the court is charged with "barring testimony that is not sufficiently relevant or reliable to be admitted into evidence." *Decker v. Libell*, 193 Ill. 2d 250, 254 (2000).

¶ 21    When there is a delay between when a defendant was driving and when her blood was drawn, extrapolation evidence might be necessary if the BAC at the time of the test was *below* the statutory limit. *Cf. Village of Bull Valley v. Winterpacht*, 2012 IL App (2d) 101192, ¶ 13.  In *Winterpacht*, extrapolation evidence showed the defendant's BAC was *above* the statutory limit when the defendant was driving. *Id.*  However, this court held the State is not required to present extrapolation evidence when it seeks to introduce a BAC test result which is *above* the statutory limit. *Id.*  "In such a case, when a reasonable amount of time elapses between when the defendant was driving and the test, extrapolation evidence is permissible but is not a foundational requirement." *Id.*  Rather, "[m]atters of delay between driving and testing go to the weight of the evidence and must be viewed in light of the circumstances surrounding the arrest." *Id.*  "Any concerns about the facts upon which the [BAC] is determined may be challenged on cross-examination." *Id.*

¶ 22    Here, the test showed a BAC of 0.107.   Because the result exceeded the statutory limit of 0.08, the State was not required to introduce extrapolation evidence as a foundational requirement for admission of the result.  Rather, admissibility would depend on all the relevant circumstances, including whether the delay between driving and the blood draw was *reasonable.*

¶ 23    The trial court relied on *Floyd* to conclude that the absence of extrapolation evidence rendered the BAC test result inadmissible.  This missed the mark.

¶ 24    In *Floyd*, the defendant was arrested at approximately 9 p.m. and given a breath test at 10:30 p.m. which showed her BAC was 0.069. *Floyd*, 2014 IL App (2d) 120507, ¶ 9. The State introduced expert testimony on extrapolation to show that the defendant's BAC was between 0.082 and 0.095 about an hour and a half earlier when she was stopped. *Id.* On appeal, the defendant contended that the extrapolation evidence was improperly admitted, because the expert did not have sufficient information to conduct a reliable extrapolation. *Id.* ¶ 13. Based on the circumstances of that case, this court held that, because the expert's opinion on extrapolation was unreliable, the prejudicial effect of admitting that opinion substantially outweighed its probative value, and, accordingly, the trial court abused its discretion in admitting it. *Id.* ¶ 20.

¶ 25    We note, here, Dr. O'Donnell testified that a reliable retrograde extrapolation requires the examiner to have certain known facts upon which to base his or her analysis. *Floyd* instructs that, when those facts are unknown, the resulting extrapolation is inherently unreliable. Dr. O'Donnell's testimony is consistent with that conclusion. This is not in dispute. Rather, defendant argues that, because the necessary factors are unknown, she cannot produce a reliable extrapolation, and, thus, the prejudicial effect of a BAC obtained four hours after the stop outweighs the diminishing probative value of the remote test. *Floyd* does not support her position.

¶ 26    In *Floyd,* the BAC result was *under* the statutory limit, and the State sought to introduce extrapolation evidence to show the driver's BAC was *above* the limit when defendant was driving. Here, defendant's BAC was *above* the legal limit. Accordingly, regardless of the presence or lack of extrapolation evidence, the BAC remains probative. Although the State must prove defendant's BAC was over the statutory limit at the time she was driving, it is not required to offer extrapolation evidence as a foundational requirement for admission of the BAC result. Accordingly, *Floyd*'s discussion of the admissibility of such evidence is not controlling.

¶ 27    Defendant also contends that, because of the four-hour delay in obtaining her BAC, the prejudice in admitting the BAC test result substantially outweighed its probative value. We disagree.

¶ 28    Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Ill. R. Evid. 403 (eff. Jan. 1, 2011). Rule 403 functions under the rules of evidence as the final threshold for admissibility. *People v. Martinez*, 2019 IL App (2d) 170793, ¶ 79. Accordingly, otherwise admissible evidence must meet the criteria of Rule 403. *Id.* Although an otherwise reliable BAC test result of 0.08 or higher is generally admissible (see *Winterpacht*, 2012 IL App (2d) 101192, ¶ 13), such evidence remains subject to Rule 403. A trial court's balancing of probative value and prejudicial impact is reviewed for an abuse of discretion. *Martinez*, 2019 IL App (2d) 170793, ¶ 79. A trial court abuses its discretion when no reasonable person would take the view adopted by the trial court. *People v. Bates*, 2018 IL App (4th) 160255, ¶ 84.

¶ 29    Here, as the trial court found, the BAC test result was probative of the issue of defendant's BAC when she was driving. Although aware of the four-hour delay in obtaining and testing defendant's blood, the trial court, critically, did *not* find that delay to be unreasonable. Case law demonstrates, in this context, the passage of time does not affect admissibility but, rather, goes to the weight to be given to the BAC test result. See *People v. Torruella*, 2015 IL App (2d) 141001, ¶ 42 (50-minute delay; holding that, because a "reasonable amount of time" passed between when the defendant drove and when her breath was tested, the delay went to the weight of the BAC evidence); *Winterpacht*, 2012 IL App (2d) 101192, ¶¶ 13, 15 (two-hour delay; holding that matters of delay between driving and BAC testing go to the weight of the BAC evidence and must be viewed in light of all the circumstances surrounding the arrest); *People v. Zator*, 209 Ill. App. 3d

322, 332 (1991) (two hour delay; "Illinois law is well settled that *any* delay between the time of the incident and the breathalyzer test goes to the weight given the results, viewed in light of the totality of the circumstances." (Emphasis added.)); *People v. Call*, 176 Ill. App. 3d 571, 579 (1988) (two-hour delay between driving and the BAC test went to the weight, not the admissibility, of the test).

¶ 30    Although we are troubled by the four-hour delay here—twice the delay in the cases cited above—defendant does not cite, nor have we found, any case addressing whether a four-hour delay is so excessive as to render a BAC test inadmissible, particularly where the trial court did not find the delay was unreasonable. As noted, *reasonable* delay in obtaining defendant's blood goes to the weight to be given that evidence, and such delay is merely one circumstance, among many, upon which the trier of fact may base its determination of whether defendant's BAC met or exceeded the statutory limit when she was driving.

¶ 31    Nor can we say that the prejudicial effect of the BAC evidence, obtained four hours after defendant was stopped, substantially outweighed its probative value. Neither the lack of extrapolation evidence, nor the delay in obtaining the BAC, affected the admissibility of the BAC test result. Defendant has not pointed to any other prejudice resulting from the BAC evidence. The trial court incorrectly found that the probative value was substantially outweighed by the danger of unfair prejudice.

¶ 32                                III. CONCLUSION

¶ 33    For the reasons stated, we reverse the judgment of the circuit court of Boone County and remand for further proceedings.

¶ 34    Reversed and remanded.

¶ 35    JUSTICE McLAREN, dissenting:

¶ 36    I respectfully dissent. The majority misapplies the rules and tenets of appellate review in order to allow the State to introduce "inherently unreliable" and prejudicial evidence to a jury.

¶ 37    While correctly noting that "[a] trial court's balancing of probative value and prejudicial impact is reviewed for an abuse of discretion" (*supra* ¶ 28), the majority then inexplicably seeks the bright-line guidance of "any case addressing whether a four-hour delay is so excessive as to render a BAC test inadmissible, particularly where the trial court did not find the delay was unreasonable." *Supra* ¶30. However, Illinois courts have long recognized that discretion and bright-line tests are antithetical. See, *i.e.*, *Floyd*, 2014 IL App (2d) 120507, ¶25 ("[W]e further emphasize that *we are not creating a blueprint or a bright-line rule* for the admissibility of retrograde extrapolation evidence. *** Whether the State produces a reliable extrapolation will depend on the specific circumstances of each case." (Emphasis added.)); *People v. Patterson*, 2017 IL App (3d) 150062, ¶ 14 ("Whether there has been an abuse of discretion in denying a continuance depends upon the facts and circumstances in each case, and there is *no bright line test* for determining when a denial in the interests of judicial economy violates the substantive right of the accused to properly defend." (Emphasis added.)); *Roach v. Union Pacific R.R.*, 2014 IL App (1st) 132015, ¶ 55 ("There is *no 'five-part test' regarding particular factors or 'a bright-line rule'* about the number of months elapsed; rather, the decision is left up to the sound discretion of the trial judge based on the totality of the circumstances." (Citation omitted.) (Emphasis added)). These cases emphasize that it is the facts and circumstances of each individual case, not some bright-line test, that must be considered in determining whether the trial court properly exercised its discretion or abused that discretion. Applying what is in actuality "a *de novo* review of a fact-intensive inquiry suited not to bright lines but to balancing leads to nothing more than an

imposition of this court's judgment over that of the trial court." *Rockford Financial Systems, Inc. v. Borgetti*, 403 Ill. App. 3d 321, 324 (2010). This misplaced footfall leads the majority astray.

¶ 38 The majority sets up and knocks down a straw man of "admissibility." After quoting extensively from *Winterpacht*, 2012 IL App (2d) 101192 (see *supra* ¶¶20-21), the majority then posits:

> "Because the result exceeded the statutory limit of 0.08, the State was not required to introduce extrapolation evidence as a foundational requirement for admission of the result. Rather, admissibility would depend on all the relevant circumstances, including whether the delay between driving and the blood draw was *reasonable*." (Emphasis in original.) *Supra* ¶ 22.[1]

The majority later concludes, "Neither the lack of extrapolation evidence, nor the delay in obtaining the BAC, affected the admissibility of the BAC test result." *Supra* ¶ 31.

¶ 39 However, the trial court here did not rule that the BAC test result was inadmissible. In denying the State's motion for directed finding (with findings that it reiterated in granting the motion to exclude), the trial court explained:

> "While the State is correct that the test is above the limit and *it is probative, however, it is also potentially prejudicial*. At this stage of the proceeding the defendant's expert opinion is the level at the time of the test cannot be determined at all. Now, whether it is the State's witness with a lower reading to a higher reading as in *Floyd* or a higher statutory result and it's the defendant's witness stating the test cannot be used at all, I'm

---

[1] I assume that the majority's analysis here is in reference to *Winterpacht*. However, there is no citation to any authority in *supra* ¶22.

not sure that I find that to be a significant procedural distinction. *If the extrapolation calculation is "inherently unreliable," which is the language from Floyd, the potential for prejudice from admitting the test is high.* I do not believe it is the correct legal position that the higher statutory reading means that the test result automatically is admitted\*\*\*." (Emphases added.)

The trial court did not find the evidence inadmissible because of the delay or the lack of foundational extrapolation evidence; it declined to admit the evidence because, in the court's exercise of discretion, the evidence's prejudicial effect outweighed its probative value. The majority's "analysis" and findings regarding admissibility is counterfactual, irrelevant, and misleading.

¶ 40    Our supreme court has held that expert testimony is necessary when, amongst other things, the subject is beyond that of the average juror's experience and qualifications and such testimony will aid the jury in reaching its conclusion. *People v. King*, 2020 IL 123926, ¶ 35. Expert testimony addressing matters of common knowledge is also admissible where "the subject is difficult to understand and explain." *Id.*

¶ 41    There is no doubt that the retrograde extrapolation of blood alcohol levels is beyond the average juror's experience and qualifications. However, the relationship between a person's BAC *four hours* after driving and her BAC at the time of driving is beyond even an expert's experience and qualifications. According to Dr. O'Donnell, there was no way to determine whether defendant's BAC was above or below 0.08 when she was pulled over, and he would "challenge any expert to [do so] with the facts in this case." He further gave his "scientific opinion" that the jury "shouldn't be making any use of [the BAC result] other than historical value." The trial court found that "[t]he relevance of the blood test results are outweighed because the Court has an expert

opinion and testimony that the test results are inherently unreliable [t]o determine the BAC at the time of the arrest." This is a proper exercise of discretion.

¶ 42    The result of the majority's misapplication of review is that the State would be allowed to serve up to the jury the results of a test administered four hours after defendant was arrested, a test for which no explanation could be provided as to how the test related defendant's BAC at the time she was driving. This is a piece of evidence with no context, with no explanation of its relevance. How is the jury to ascribe weight to such evidence when its relation to the alleged crime is not and could not be explained? For a trial court to allow the admission of such "inherently unreliable" evidence, the relevance of which the trial court found to be outweighed by its prejudicial effect, would be an abuse of discretion, if not an outright abdication of its role in presiding over a trial. See *People v. Lambert*, 288 Ill App. 3d 450, 462-63 (1997) (despite warning the prosecutor of the possibility of inserting reversible error, "the trial court abdicated its role by allowing the prosecutor to enter the evidence substantively and stated, 'if you [the prosecutor] want it done, it's your case, God bless you.' ").

¶ 43    Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Ill. R. Evid. 403 (eff. Jan. 1, 2011). The introduction of the BAC result here, with no possibility of explanation or context, would clearly lead to unfair prejudice, confusion, and misdirection. "An abuse of discretion occurs only where the trial court's decision is arbitrary, fanciful, or unreasonable to the degree that no reasonable person would agree with it." (Internal quotation marks omitted.) *People v. Lerma*, 2016 IL 118496, ¶ 23. The trial court's decision to exclude the BAC result was neither arbitrary, fanciful, nor unreasonable, but was based on the evidence and the totality of the circumstances. The majority is doing nothing more than imposing its own judgment over the trial

court's reasoned judgment. This is made abundantly clear when the majority states, "Nor can we say that the prejudicial effect of the BAC evidence, obtained four hours after defendant was stopped, substantially outweighed its probative value." *Supra* ¶ 31. The majority issues its own edict instead of considering whether no reasonable person would agree with the trial court's exercise of discretion. It accomplishes this by reweighing the expert testimony and giving it no weight whatsoever, in essence giving the State the benefit of, not a *de novo* review, but a *de novo* hearing. See *Jones v. Board of Fire & Police Commissioners*, 127 Ill. App. 3d 793, 801 (1984) (*de novo* hearing is a new proceeding, "the same as if it had not been heard before and as if no decision had been previously rendered." (Internal quotation marks omitted.)).

¶ 44     I present the majority with these questions. If the State is going to submit the BAC result as evidence without extrapolation testimony, and with the impossibility of defendant presenting extrapolation testimony in her defense, how is the jury supposed to weigh the evidence to determine what the BAC was at the time defendant was driving without utilizing guess, speculation, and conjecture? If this is beyond the ken of the average juror, how can the majority not realize that it is forcing the defendant to present a defense to refute, not real evidence, but guess, speculation, and conjecture that are the antithesis of the presumption of innocence? If a four-hour delay is 2 times a two-hour delay, is the quantum of guess, speculation, and conjecture twice as much? In essence, O'Donnell opined that it is virtually impossible to prove beyond a reasonable doubt that the defendant was guilty without extrapolation testimony. How is refusing to allow such prejudice to occur an abuse of discretion?

¶ 45     As in *Lambert*, the State is bent on admitting evidence for a purpose that would be error. In *Lambert*, the State used a prior consistent statement as substantive evidence when the evidence was only admissible for the limited purpose of refuting the argument of recent fabrication. See

*Lambert*, 288 Ill App. 3d at 457. In the case before us, extrapolation testimony to establish BAC at the time of driving would be improper, based upon O'Donnell's unrefuted expert testimony. Instead of abdicating his role as the gate keeper, this judge reasonably exercised his discretion in order to prevent the jury from considering evidence without the expert testimony that was necessary for the jury to properly weigh the evidence.

¶ 46    Throughout this case, the State's position has been clear, finding no reason for the BAC evidence to be excluded:

"What this boils down to in the State's opinion is that this evidence should come in. It absolutely should come in. What the defense is arguing goes to the weight, not the admissibility of the evidence. *** The State is not trying to submit any extrapolation evidence in this case.

* * *

So, Your Honor, the State believes that this should go—this evidence should not be excluded. It should be admitted as long as the State makes the foundational requirements. That still is absolutely required that the State has to be make all the foundation requirements. But what the defense is arguing is a weight, not an admissibility issue."

¶ 47    On the other hand, defendant noted that the evidence potentially had sufficient probative value in a limited circumstance:

"And if you do an analysis of is it more prejudicial than it is probative, the conclusion that you get is the probative value exists only to prove that there was alcohol consumption. And if my client doesn't deny the alcohol consumption, then the probative value is essentially nothing, and the prejudicial effect is something that's recognized in the case law. *** People might just grab on to that and not meaningfully evaluate the evidence of whether

the person is really guilty. They might just make it on an improper conclusion that because she was—she had a high test result later, you know, that's all we need.

So when you balance the probative value—and I will—I will spot [ASA] Sierens and the Court the argument so nobody has to make it later. If she does get on the stand and say I had nothing to drink, then at that point she'd be opening the door to this evidence that shows that she did, but that's all that evidence shows is that there was alcohol consumption and it doesn't tell us how much and it doesn't tell anybody—it doesn't give anybody an ability to determine whether there was intoxication earlier because we're unable to do the calculation that one would have to do to determine that."

¶ 48    The trial court was thus presented with three options: (1) exclude the evidence in its entirety; (2) exclude the evidence unless defendant opened the door to its use in a limited circumstance; and (3) allow the evidence to be admitted for the jury's unfettered consideration. The majority, conflating the weight that a jury may give to evidence with the purposes for which the evidence may be admitted, has concluded that the trial court erred in finding that the prejudice of the BAC evidence outweighed its probative value. But to what issue is the BAC probative? Just because evidence is admissible and is presented to the jury does not mean that the jury can or must consider it for all purposes. While the law of the case is now that the decision to exclude the evidence was an abuse of discretion, I must point out the continuing feasibility of the third option.

¶ 49    Evidence can be admitted for a limited purpose. "When evidence which is admissible *** for one purpose but not admissible *** for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper purpose or scope and instruct the jury accordingly." Ill. R. Evid. 105 (eff. Jan. 1, 2011). In the absence of such a request (or even over the objection of a party), a trial court may appropriately exercise its supervisory power over the trial and *sua sponte*

give such an instruction to protect the defendant, insure the fairness of the trial, and insure that the jury properly considers the evidence. See *People v. Foster*, 195 Ill. App. 3d 926, 950 (1990).

¶ 50    The fact that the majority here has reversed the trial court's exclusion of the BAC evidence does not mean that such evidence is admissible without limitation for any and all purposes the State might imagine. Upon trial after remand, the judge may be required to address the issue again if the State proffers the BAC evidence without the support of extrapolation testimony and attempts to submit the evidence to establish defendant's BAC at the time of driving. The trial court has the authority to preclude the admission of the evidence because it is proffered for an improper purpose, or it may issue an instruction limiting the purpose for which the jury may consider the evidence. Curiously, even if the majority had affirmed the judgment on appeal, the State would have been able at trial to move to admit the BAC with a limiting instruction.

¶ 51    The majority has nullified defendant's presumption of innocence by allowing the jury to find defendant guilty based on admissible, but unreliable, evidence without foundational expert extrapolation opinion, that does not establish beyond a reasonable doubt defendant's BAC at the time that she was driving. Defendant will be put in the position of having to defend against extrapolation evidence that was not, and could not, be presented to the jury. I submit that the majority has failed to give any credence to the totality of the evidence of record. The majority has invaded the province of the trial court's exercise of discretion by disregarding the expert testimony upon which the trial court exercised its discretion. It has committed both procedural and substantive error and effectively made extrapolation evidence an obsolete vestige of scientific expertise.