2023 IL App (1st) 211497-U

No. 1-21-1497

August 8, 2023

SECOND DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 20 CR 12652 |
| | ) | |
| HERMINO REYES, | ) | Honorable |
| | ) | Kenneth J. Wadas, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE HOWSE delivered the judgment of the court.
Justices Ellis and Cobbs concurred in the judgment.

ORDER

¶ 1    *Held*:  We affirm defendant's conviction for driving under the influence of alcohol over his contention that the State failed to prove him guilty beyond a reasonable doubt.

¶ 2    Following a bench trial, defendant Hermino Reyes was found guilty of aggravated driving under the influence of alcohol (DUI) and felony driving while his driver's license, permit, or privilege to operate a motor vehicle was suspended or revoked and sentenced to concurrent terms

of six and three years' imprisonment, respectively.[1] On appeal, defendant contends that the State did not present sufficient evidence that he was intoxicated. We affirm.

¶ 3    Defendant was charged by information with seven counts of aggravated DUI and six counts of felony driving while his driver's license, permit, or privilege to operate a motor vehicle was suspended or revoked. Relevant to this appeal, count I for aggravated DUI alleged that defendant drove or had actual physical control of the vehicle while under the influence of alcohol and had committed five prior DUI violations, subjecting him to sentencing as a Class X offender. 625 ILCS 5/11-501(a)(2), (d)(1)(A), (d)(2)(E) (West 2020).

¶ 4    At trial, Chicago police officer Robert Brown testified that he had attended the Chicago police academy. There, he trained to detect people driving under the influence of alcohol and received "Breathalyzer technician training." During his career, he had conducted 400 to 500 DUI arrests, and administered the standardized field sobriety tests approximately twice more than that.

¶ 5    At approximately 9 a.m. on December 6, 2020, while driving, Brown observed a vehicle parked next to a bus stop. As Brown passed the vehicle, his automatic "in-car plate reader" alerted him that "the registered owner was revoked." Brown ran the vehicle's license plate number through LEADS and discovered defendant owned the vehicle, which then drove away. Brown followed the vehicle, which was "swerving" within its lane, so he initiated a traffic stop by activating his emergency equipment. The vehicle stopped.

---

[1] Defendant is referred to as both "Hermino Reyes" and "Herminio Reyes" throughout the record and briefs on appeal. Since all the relevant court documents, including the charging instrument, bear the spelling "Hermino," we use this spelling as well, for consistency's sake.

¶ 6    Brown exited his vehicle and approached the driver's side of the other vehicle. The driver, whom Brown identified in court as defendant, opened the door. Brown smelled alcohol on defendant's breath, he slurred and mumbled when he spoke, and had red, bloodshot, glassy eyes. Based on these observations, Brown asked defendant to exit the vehicle and perform the field sobriety tests. Defendant responded in English and Brown believed that defendant understood Brown's questions.

¶ 7    First, Brown administered the horizontal gaze nystagmus (HGN) test, after confirming with defendant that there was nothing "wrong with [defendant's] eyes." Defendant responded that "no, he could see okay." Brown then held a pen approximately one foot from defendant's eyes and asked him to follow the movement of the pen with his eyes only. According to Brown, a person showing three of six possible clues on either eye establishes consumption of alcohol. Defendant demonstrated three clues on each eye. Defendant also showed "vertical nystagmus," which Brown testified "is an indicator of a higher [blood alcohol content] than normal."

¶ 8    Brown next administered the one-leg stand test, after asking defendant if anything prohibited him from doing the test. Defendant showed Brown a scrape on his leg but did not say that the scrape would stop him from doing the test. Brown administered the test, which defendant did not complete because he displayed four of eight possible clues for impairment, including using his arms to balance, starting before Brown finished the instructions, and putting his foot down repeatedly.

¶ 9    Lastly, Brown administered the walk-and-turn test, which he demonstrated for defendant. Defendant showed four of eight possible clues for impairment, including failing to walk "heel to

toe" and using his arms to balance. According to Brown, the threshold for identifying impairment with the walk-and-turn test is two out of eight clues.

¶ 10    Brown then asked defendant whether he had been drinking, which defendant initially denied. Eventually, defendant said that he drank one 16-ounce beer earlier in the evening, and had a beer for breakfast prior to driving. Defendant swayed as he spoke. Based on the clues from the standardized field sobriety tests and defendant's history of driver's license revocations, Brown arrested him.

¶ 11    The State published Brown's dashboard camera and body camera footage depicting the traffic stop and the standardized field sobriety tests. Both videos are in the record on appeal and have been viewed by this court.

¶ 12    The dashboard camera footage depicts Brown passing defendant's vehicle, which is parked by a bus stop. After a few seconds, Brown returns to defendant's vehicle, which is now moving, and follows it. Brown testified that, at that point, he had turned around his vehicle, activated the emergency lights, and was running defendant's vehicle plate.

¶ 13    The body camera footage depicts Brown using his vehicle's computer, which displays an image of defendant's vehicle with a red alert which Brown testified signified "revocation." Brown then curbs defendant's vehicle on the right shoulder and approaches the driver's side door. Defendant opens the door and speaks to Brown, who informs defendant that his "plates were coming back revoked." Defendant denies having identification or drinking alcohol, and Brown informs defendant he "can kind of smell it." Brown asks defendant if he can speak English; defendant responds affirmatively, speaking in accented English.

¶ 14    After defendant provides his name, Brown returns to his vehicle and inputs defendant's name into the computer. The search results display entries for multiple revocations, suspensions, and DUI offenses, which Brown states on camera go "back to 1994."

¶ 15    Brown returns to defendant's vehicle, asks him to exit, and escorts him to the sidewalk. Defendant states that he had nothing to drink. Brown then administers the HGN test, after confirming that defendant did not have "anything wrong with his eyes." Brown holds a pen in front of defendant's face and tells him to follow the movement of the pen with his eyes only. The movements of defendant's eyes are not clear from the video.

¶ 16    Brown then asks defendant if he had "anything wrong" with his legs. Defendant responds affirmatively, rolls up his left pant leg, and removes his shoe to show a small wound on his left ankle. After defendant puts his shoe back on, Brown demonstrates the one-leg stand test. As Brown begins to explain the test, defendant stands on one leg without being told to do so. Brown tells defendant to hold his foot six inches from the ground and count to 30. Defendant begins the test, but he uses his arms to balance and his leg is unstable, so he is unable to complete the test.

¶ 17    Lastly, Brown explains the walk-and-turn test, which he describes as taking nine steps in one direction, turning, and taking nine steps in the other direction. Brown demonstrates the test, but his feet are not visible on camera. With defendant off-camera, Brown tells defendant to "hold on" and defendant can be heard counting in Spanish. Defendant then performs the test by walking nine steps in one direction, turning, and taking nine steps in the opposite direction. Defendant walks in a line with his feet directly in front of each other, but with space between his feet. Defendant also uses his arms to balance during the turn and during the walk back.

¶ 18    After defendant performs this test, Brown asks defendant again whether he had been drinking. Defendant responds that "in the morning" he purchased a "big" beer and had been drinking the previous night. Defendant acknowledges that he was "revoked." Brown then arrests defendant.

¶ 19    Brown further testified that after placing defendant into custody, Brown advised him of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), and transported him to the police station. Afterward, defendant informed Brown that he drank two beers for breakfast, including one 16-ounce can. Based on his training and experience, Brown believed that defendant was under the influence of alcohol when he was arrested.

¶ 20    On cross-examination, Brown stated that he followed defendant's vehicle for approximately two blocks prior to curbing defendant. Brown observed defendant's vehicle make a "small weave" within its lane, but did not notice any traffic violations. Defendant did not stumble or fall as he exited the vehicle and did not have difficulty walking to the sidewalk.

¶ 21    Brown was trained to administer the field sobriety tests in a 40-hour training, which occurred approximately 10 years prior to the trial, and he had not taken refresher courses. Brown agreed that the HGN test shows whether a person has consumed alcohol, but Brown already knew defendant had done so because Brown smelled alcohol in the vehicle. Defendant paid attention to Brown's instructions for the HGN test.

¶ 22    Brown stated that he was mistaken when he said the one-leg stand test had eight clues; rather, it only had six, with two clues being the threshold for intoxication. Defendant did not fall during the one-leg stand test. During the walk-and-turn test, defendant followed Brown's instructions "[t]o the best of his ability," and did not fall, stop walking, or turn incorrectly, although

he did raise his arms during the turn. Brown previously arrested defendant for aggravated DUI in 2016, which Brown remembered during the incident in 2020.

¶ 23    On redirect examination, Brown testified that defendant began the one-leg stand test before Brown finished explaining it. Defendant refused a Breathalyzer test at the police station.

¶ 24    The State submitted a certified copy of defendant's Secretary of State abstract, which is contained in the record and has been viewed by this court. It reflects that defendant's driver's license was revoked on December 6, 2020, and lists multiple arrests and convictions for DUI and driving on a suspended or revoked license beginning in April 1990. The State also presented a stipulation that when defendant was arrested, he had six prior violations for driving under the influence of alcohol, drugs, or other intoxicating compounds, and five convictions and violations for driving with a suspended license.

¶ 25    In closing, defense counsel argued that Brown did not observe defendant commit any traffic violations, and Brown's body camera does not show that defendant's speech was slurred. Brown did not "fully pick up on every word" of the exchanges with defendant due to defendant's accent. Defendant did not stumble or fall, but performed the field sobriety tests correctly and to the best of his ability although he was "not a young man" and not in "great shape." Lastly, the State did not present direct evidence that defendant could not safely control the motor vehicle, and the odor of alcohol did not establish that defendant was intoxicated.

¶ 26    The court found defendant guilty of all charges. In relevant part, the court commented that Brown testified credibly and his body camera footage corroborated his testimony "pretty much 100 percent." Further, the court commented that the State showed defendant smelled strongly of

alcohol, admitted to drinking, had bloodshot eyes, and had "somewhat" slurred speech, although a "language issue" may have been present.

¶ 27    The court further noted that the HGN test showed multiple clues to establish consumption of alcohol, defendant began the one-leg balance test before Brown told him to begin, and defendant used his hands to help balance but had difficulty balancing. Defendant generally performed the first nine steps of the walk-and-turn test correctly, although he elevated his arms to turn. On the other nine steps, defendant was rushing and did not do the test correctly because his feet were spaced apart and not perfectly aligned. The court could not "find a flaw" with the officer's assessment that defendant failed the one-leg stand and walk-and-turn tests. Lastly, defendant refused the Breathalyzer test, which showed a consciousness of guilt.

¶ 28    Defense counsel filed a "motion to reconsider finding of guilty," arguing that the evidence was insufficient to support a conviction for DUI. Counsel argued that the court should give little weight to defendant's performance on the field sobriety tests, because defendant was a Spanish speaker and the officer was not, and the court erred in allowing Brown to testify that the HGN test results showed that defendant's blood alcohol content was higher than "normal."

¶ 29    The court denied the motion, finding the evidence supported that defendant was intoxicated and thus guilty of aggravated DUI. The court commented that it viewed the video and did not believe that a language barrier contributed to defendant not understanding Brown's commands.

¶ 30    After a hearing, the court merged the aggravated DUI and driving with a suspended license counts into one count of each charge, and sentenced defendant to six years' imprisonment on count I for aggravated DUI as a Class X offender, concurrent to three years' imprisonment on the driving

with a suspended license charge (count VIII). Defendant did not file a motion to reconsider sentence.

¶ 31    On appeal, defendant argues that the State failed to prove him guilty of aggravated DUI because the "only" evidence that he was intoxicated comprised "unreliable" field sobriety tests which were administered incorrectly.[2]

¶ 32    The standard of review for a challenge to the sufficiency of the evidence is "whether, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Internal quotation marks omitted.) *People v. Belknap*, 2014 IL 117094, ¶ 67. The trier of fact resolves conflicts in the testimony, weighs the evidence, and draws reasonable inferences from basic facts to ultimate facts. *People v. Brown*, 2013 IL 114196, ¶ 48. Accordingly, this court will not substitute its judgment for that of the trier of fact on the weight of the evidence or credibility of witnesses. *Id*. A reviewing court must allow all reasonable inferences from the record in favor of the prosecution (*People v. Cunningham*, 212 Ill. 2d 274, 280 (2004)) and will not reverse a conviction unless the evidence is "unreasonable, improbable, or so unsatisfactory as to justify a reasonable doubt of the defendant's guilt." (Internal quotation marks omitted.) *People v. Jackson*, 232 Ill. 2d 246, 281 (2009).

¶ 33    To sustain defendant's conviction for DUI, the State had to prove beyond a reasonable doubt that he was driving or in the actual physical control of a vehicle while "under the influence of alcohol." 625 ILCS 5/11-501(a)(2) (West 2020). "[A]ggravated DUI occurs when an individual commits some form of misdemeanor DUI *** and other circumstances are present," which are

---

    [2] On appeal, defendant does not challenge his conviction for felony driving while his driver's license, permit, or privilege to operate a motor vehicle was suspended or revoked.

outlined in the statute. *People v. Quigley*, 183 Ill. 2d 1, 10 (1998). Relevant here, aggravated DUI occurs when the person commits DUI "for the third or subsequent time." 625 ILCS 5/11-501(d)(1)(A) (West 2020). Defendant only challenges the State's evidence that he was under the influence of alcohol.

¶ 34    " 'A person is under the influence of alcohol when, as a result of drinking any amount of alcohol, his mental or physical faculties are so impaired as to reduce his ability to think and act with ordinary care.' " *People v. Morris*, 2014 IL App (1st) 130512, ¶ 20 (quoting Illinois Pattern Jury Instructions, Criminal, No. 23.29 (4th ed. 2000)). "To be under the influence of alcohol, a defendant must be under the influence to a degree that renders [him] incapable of driving safely." *People v. Groebe*, 2019 IL App (1st) 180503, ¶ 57. The State is not required to submit scientific proof to establish a defendant's intoxication and may rely solely upon circumstantial evidence. *Id.* ¶ 58. The credible testimony of the arresting police officer alone is sufficient to sustain a DUI conviction. *People v. Elliott*, 337 Ill. App. 3d 275, 281 (2003). Relevant and admissible evidence related to intoxication includes testimony that the defendant's breath smelled of alcohol, or the defendant's eyes were glassy and bloodshot. *Morris*, 2014 IL App (1st) 130512, ¶ 20. "A defendant's refusal to submit to chemical testing shows a consciousness of guilt." *Id.*

¶ 35    Viewing the evidence in the light most favorable to the State, and allowing all reasonable inferences in favor of the State, a rational trier of fact could find beyond a reasonable doubt that defendant was under the influence of alcohol. The evidence established that Brown observed defendant driving his vehicle, and Brown's onboard computer established that defendant was "revoked." Brown observed defendant's vehicle swerve within its lane, and after curbing defendant, smelled alcohol on his breath. Defendant slurred his speech, his eyes were glassy and

bloodshot, and he failed the field sobriety tests. The video corroborates Brown's testimony that defendant failed the field sobriety tests. Lastly, defendant admitted to drinking alcohol, and refused a Breathalyzer test. This evidence, taken together, was sufficient to prove defendant guilty of aggravated DUI. See *id*.

¶ 36    Defendant nevertheless argues that the State did not present sufficient evidence that he was under the influence of alcohol, because Brown's observations alone did not establish defendant's intoxication and Brown did not administer the field sobriety tests correctly. In support of the latter proposition, defendant cites extensively to the National Highway Traffic Safety Association's (NHTSA) manual describing standard procedures and conditions for administering each test.

¶ 37    As an initial matter, the NHTSA manual was not introduced at trial and, therefore, is not in the record on appeal. See *People v. Guerra*, 2020 IL App (1st) 171727, ¶ 28. As the reviewing court, we will not consider matters outside the record on appeal. See *Allstate Insurance Co. v. Kovar*, 363 Ill. App. 3d 493, 499 (2006). Further, "[w]hether a field-sobriety test was performed correctly goes to the test's admissibility." *People v. Eagletail*, 2014 IL App (1st) 130252, ¶ 39. On appeal, defendant does not challenge the admissibility of the evidence regarding the field sobriety tests. Rather, defendant claims that the tests were unreliable because they were performed incorrectly. Defendant's contentions thus attack the weight of the evidence, which is a factual issue for the trial court to resolve. See *People v. Phillips*, 2015 IL App (1st) 131147, ¶ 24 ("[B]ecause [the defendant] does not challenge the admissibility of the HGN test on appeal, but rather its probative value, his challenge goes to the weight accorded to this evidence, which is a factual determination reserved for the trier of fact.").

¶ 38    To that point, defendant first contends that he speaks Spanish and Brown did not ascertain that defendant fully understood his instructions. However, the video establishes that defendant understood the instructions for each test as he attempted them as instructed and answered Brown's questions accurately. Therefore, we do not find this to be a basis for reversal.

¶ 39    Defendant further claims that Brown was not credible because his testimony about his observations of the field sobriety tests was "vague, confusing, and incorrect" and he misstated the observed clues of impairment on each test. According to defendant, Brown's testimony contradicted the video, especially regarding the walk-and-turn test, which only supports Brown's assertion that two clues existed: that defendant failed to touch heel to toe while walking and used his arms to balance. Defendant claims the video establishes that he did not start the test too soon and did not step off the line, lose his balance, or turn incorrectly. Brown testified, however, that two clues are required to find impairment in the walk-and-turn test, and the video corroborates that at least two clues were established. Also, the video does not affirmatively establish that defendant did not start the test too soon, because defendant was off-camera when Brown demonstrated the test. In fact, Brown can be heard telling defendant to "hold on" as defendant begins to count in Spanish. A reasonable inference is that defendant had begun the test before Brown demonstrated it. As such, even if the other clues are not clear from the video, it does not substantially contradict Brown's testimony and is not a basis to find him incredible.

¶ 40    Moreover, "it is for the fact finder to judge how flaws in part of the testimony affect the credibility of the whole." *Cunningham*, 212 Ill. 2d at 283. The trier of fact may accept or reject all or part of a witness's testimony. *People v. Corral*, 2019 IL App (1st) 171501, ¶ 85. The court heard Brown's testimony, including the purported inconsistencies with the video, and accepted it. Thus,

defendant's contention that Brown was not credible is merely a request for this court to reweigh the evidence and assess Brown's credibility. We find no reason to disturb the court's credibility determinations. See *Brown*, 2013 IL 114196, ¶ 48.

¶ 41    Lastly, defendant claims his obesity influenced the one-leg stand test, noting the NHTSA manual acknowledges that people who are more than 50 pounds overweight have difficulty performing the one-leg stand test. However, neither the NHTSA manual nor evidence of defendant's weight were presented at trial, and thus we will not consider this claim for the first time on appeal. See *Kovar*, 363 Ill. App. 3d at 499.

¶ 42    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 43    Affirmed.